Pennsylvania Labor Relations Board *v.* Kaufmann Department Stores, Inc., Appellant.

Argued September 30, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John C. Bane, Jr.,* with him *Seward H. French, Jr.,* and *Reed, Smith, Shaw & McClay,* for appellant.

*J. Charles Short, M. Louise Rutherford,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee.

*M. H. Goldstein,* for Labor Union, complainant before Board.

OPINION BY MR. JUSTICE STERN, November 23, 1942:

The Pennsylvania Labor Relations Board was called upon in this case to determine an issue of fact, which, as properly stated by the board, was whether the employment of Henry A. Richards was terminated by Kaufmann Department Stores, Inc., because of his union activities, or merely in the course of the prudent and economical operation of the furniture department of the Kaufmann store. The board found that his discharge was a violation of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, and ordered that he be reinstated with a certain amount of back pay. The Court of Common Pleas of Allegheny County affirmed the order of the board, and Kaufmann Department Stores, Inc., now appeals.

We approach consideration of the case with full realization of the limited scope of appellate review in such a proceeding. The amendatory act of June 9, 1939, P. L. 293, section 9(b), provides that "the findings of

the board as to the facts, if supported by substantial and legally credible evidence, shall . . . be conclusive." This means that it is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances: *National Labor Relations Board v. Nevada Consolidated Copper Corporation*, 62 Sup. Ct. Rep. 960; *Agwilines, Inc., v. National Labor Relations Board*, 87 Fed. 2d 146, 151; *National Labor Relations Board v. Moore-Lowry Flour Mills Co.*, 122 Fed. 2d 419, 422. Upon judicial review, however it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion": *Consolidated Edison Co. v. National Labor Relations Board*, 305 U. S. 197, 229. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established": *National Labor Relations Board v. Columbian Enameling & Stamping Co.*, 306 U. S. 292, 300. "The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power": *National Labor Relations Board v. Thompson Products, Inc.*, 97 Fed. 2d 13, 15; *National Labor Relations Board v. Union Pacific Stages, Inc.*, 99 Fed. 2d 153, 177. "Suspicion may have its place, but certainly it cannot be substituted for

evidence": *Union Trust Co. of Pittsburgh's Petition,* 342 Pa. 456, 464, 20 A. 2d 779, 782.

Our inquiry in the present case, therefore, is directed to the sole question whether the evidence produced at the hearings before the Labor Relations Board justifies, in the light of the above principles, the conclusion reached by the board and by the court below that Kaufmann Stores violated the Labor Relations Act in discharging Richards from its employ.

There was no conflict of testimony requiring reconciliation or choice as to credibility. Richards was employed in the furniture department of the Kaufmann store as a salesman, practically without interruption, from 1927 to March 8, 1938. On the latter date he and six other salesmen in that department were discharged. The six were subsequently re-employed in other departments or placed on the pension roll, but Richards was not taken back in any capacity. The reason for the discharge, according to Kaufmann Stores, was that there was a marked decline in the business of the furniture department during the early months of 1938, and as the salesmen, although on a commission basis, were entitled to drawing accounts which, if not equalled by the commissions earned, represented a fixed expense of the department, it was necessary, in the interest of economy of operation, to reduce the selling force. The persons discharged were those who, during the preceding period of three months, had had the poorest selling records, and among these was Richards.

It is, of course, true, and is conceded by all, that, notwithstanding the Labor Relations Act, an employer retains the right, subject to a single exception, to discharge his employes or any of them for cause or, in the absence of a contractual obligation to the contrary, for no cause at all: *National Labor Relations Board v. Jones & Laughlin Steel Corporation,* 301 U. S. 1, 45, 46; *Associated Press v. National Labor Relations Board,* 301 U. S. 103, 132; *Phelps-Dodge Corporation v. Na-*

*tional Labor Relations Board,* 313 U. S. 177, 186, 187; *Jefferson Electric Co. v. National Labor Relations Board,* 102 Fed. 2d 949, 957. The act was not intended to empower the board to substitute its judgment for that of the employer in the hiring or discharge of employes, nor to vest in the board any managerial authority: *National Labor Relations Board v. Union Pacific Stages, Inc.,* 99 Fed. 2d 153, 177. The only limitation upon the right of the employer to discharge an employe is that he may not, under cover of such right, interfere with, restrain or coerce his employes in the exercise of their rights of self-organization and collective bargaining nor discriminate against them because of union activity, in violation of the provisions of the act.

It was the opinion of the board and of the court below that in the discharge of Richards Kaufmann Stores was guilty of the unfair labor practices defined in section 6 (a) of the act, namely, "To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act" (such rights being stated in section 5 as "the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection") ; and section 6 (c) of the act, namely, "By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization." Richards was a member of Retail Clerks' International Protective Association, Local No. 1365, as were all of the salesmen employed in the furniture department of the Kaufmann store. This local made an agreement in September, 1937, with Labor Standards Association, representing Kaufmann Stores and other department stores in the city of Pittsburgh. The agreement expressly recognized the right of the employer to discharge any employe "for

inefficiency or incompetency in the work in which an employe is engaged." It provided that, in cases of lay-off, departmental seniority preference (based on length of service) should prevail. Apparently the principal contention of the Labor Relations Board is that, instead of discharging Richards and the six other employes, Kaufmann Stores should have laid them off, in which case the dismissals would have had to be in accordance with their seniority rights, whereas, in fact, several employes junior in time of employment to Richards were retained. There is no provision, however, in the Labor Relations Act, or even in the agreement with the local, which limited the right of Kaufmann Stores to choose between laying off or discharging employes in order to reduce expenses because of a business recession. That choice would naturally depend on the judgment of Kaufmann Stores as to whether the decline in its business was likely to be temporary or more prolonged. The agreement with the local provided, in the case of a lay-off, that seniority rights should cease after six months, thus impliedly fixing that time as the normal limit for a lay-off as distinguished from a discharge. The significant fact is that, although several years have elapsed since the discharge of these salesmen, no others have been employed in the department to replace them but, on the contrary, the selling force was further reduced on June 8, 1938, when two more of the furniture salesmen were admitted to the pension roll. Had new employes been taken on within the six months' period there might be some ground to question the sincerity of Kaufmann Stores in resorting to a discharge instead of a lay-off. The board states in its decision that it "does not believe that it was necessary for Kaufmann Department Stores, Inc., to dismiss any of its employes under the circumstances herein presented." This reveals a fundamental misconception of the board's authority. Kaufmann Stores alone had the right to determine how many salesmen it wished to have

in its employ and how many permanently to dismiss if it desired to reduce its sales force.

The same observation applies to the position taken by the board that, in selecting for discharge those who were least efficient, Kaufmann Stores should not have rated the employes according to their records over a period of three months but should have judged them by the entire period of their service. It was for the employer to fix its own standard of efficiency, there being no restriction on that right in the Labor Relations Act or in the agreement with the local. Certainly an inability to earn one's salary is, from a practical point of view, the most convincing proof of inefficiency, and it is the current, not the past, record of the employe which is of paramount interest to an employer.

What, then, are the circumstances upon which the board relies for its decision that Kaufmann Stores was guilty of an unfair labor practice in discharging Richards? It appears that a few months before that discharge five sales employes had been dismissed; it was then discovered that two of these had been receiving only $25 a week instead of $40 a week as their drawing account, the latter sum being the amount which had been established as the wage schedule. Upon complaint by the local, Kaufmann Stores promptly reinstated the five and reimbursed the two employes for the difference between $25 and $40 per week. The record does not disclose sufficient facts upon which to pass judgment in this matter, but, even assuming that Kaufmann Stores was, in part at least, in the wrong, it promptly made amends and the incident had nothing whatever to do with the subsequent discharge of Richards. Some fault is found with the store manager because, a week before Richards' discharge, he explained to the salesmen that it would be necessary either to reduce their drawing accounts or to discharge some of the force; this direct approach to the employes is denounced as a violation of the principle of collective bargaining

through representatives. The fact is that the salesmen rejected the proposal and the conference caused no harm to anyone; in any event it has no bearing upon the propriety of Richards' discharge or on this proceeding for his reinstatement. Finally, the local claims that after the discharge the remaining salesmen, although retaining their membership in the union, became derelict in the payment of their dues. No evidence was presented as to the extent or the duration of such dereliction, nor was it shown to have resulted from the discharge of Richards or to have been in any way connected therewith. Admittedly there is no evidence in the record that Kaufmann Stores ever suggested to any of its employes that they should not pay their dues, or sought in any manner to weaken their allegiance to the union.

It must, then, be apparent that there is no basis for the board's finding that Kaufmann Stores violated the Labor Relations Act by interfering with, restraining or coercing its employes in their exercise of the rights guaranteed them by the act, or that the discharge of Richards discouraged, or was aimed to discourage, membership in the union. The board was in error in stating that, under the circumstances, "it was necessary for the respondent to explain in a satisfactory manner why Richards was discharged." On the contrary, as Kaufmann Stores had the right to discharge Richards and gave a lawful, normal, readily comprehensible reason for that action, the burden was upon Richards, the local, or the board to prove by substantial and legally credible evidence that the real motive of Kaufmann Stores was an improper one and that the discharge of Richards constituted, directly or indirectly, an unfair labor practice within the meaning of the act: *Union Trust Co. of Pittsburgh's Petition,* 342 Pa. 456, 464, 20 A. 2d 779, 782; *Martel Mills Corporation v. National Labor Relations Board,* 114 Fed. 2d 624, 631. There is not a shred of such evidence in the record. There is no evidence that

406

Kaufmann Stores was hostile to Local No. 1365; indeed, the agreement between them was renewed in September, 1938. Richards did not hold any office in the local, was never active in the union, and was not in any sense a leader in union activities. There is not the slightest indication in the testimony that Kaufmann Stores had any animus whatever against him, nor was there any real reason shown for his discharge other than that, in the judgment of Kaufmann Stores, he had not continued to measure up to the degree of efficiency necessary to make his salesmanship profitable to his employer. It is of striking significance that Richards himself, when questioned at the hearing before the trial examiner as to whether he had any reason to believe that he was discharged because of his union membership, stated: "I do not know whether it had anything to do with the union," and that the trial examiner also expressed the opinion that there was no evidence that the discharge of Richards was intended to discourage membership in the union.

While recognizing, therefore, the extent of the power of the Labor Relations Board to determine the facts in controversies within its jurisdiction and to draw reasonable inferences and conclusions therefrom, we are nevertheless obliged in the present case to reverse its action and that of the court below in reinstating Richards, because a careful reading and consideration of the testimony fail to disclose any basis for the conclusion that his discharge constituted a discrimination forbidden by the act, was intended in any way to affect, or did affect, the union adversely, interfered with union organization or activities, or intimidated or coerced any of the Kaufmann employes. In short, there is no "substantial and legally credible evidence" to support the order of the board and of the court below.

The order of the court is reversed; costs to be paid by appellee.