## Pennsylvania Labor Relations Board v. Metropolitan Life Insurance Co.

*Owen B. Rhoads*, for Metropolitan Life Insurance Co.

*Louis F. McCabe*, for Insurance Guild, Local No. 22.

*George. L. Reed* and *Alex Satinsky*, for Pennsylvania Labor Relations Board.

LEVINTHAL, J., July 19, 1943.—The proceedings in this case are of a dual nature, though the same issue is involved in each. We have before us a petition filed by the Metropolitan Life Insurance Company for review of a decision of the Pennsylvania Labor Relations Board, as well as a petition for enforcement filed by the latter.

The Metropolitan Life Insurance Company advances two principal contentions: First, the Pennsylvania Labor Relations Act has no application to insurance companies or to their selling agents; and, second, the evidence is legally insufficient to warrant the board's finding of fact that one Abraham E. Krupnick, an agent of the Metropolitan Life Insurance Company, was discharged because of union activity.

We had occasion to consider the first question in John Hancock Mutual Life Ins. Co. of Boston v. Pennsylvania Labor Relations Board, 45 D. & C. 169 (1942). We there held that the act does not apply to insurance companies and their employes. The reasons we there advanced for our decision are, in our opinion, still cogent and operative. We consequently reaffirm our position in that case, and dismiss the Metropolitan Life Insurance Company's first contention as being without merit.

In deciding the second question, it is unnecessary to review in detail all of the evidence contained in the voluminous record. It is admitted that Krupnick was guilty of numerous and persistent violations of the rules and regulations of his employer's business, and of irregularities in the keeping of his accounts, albeit it would appear that such irregularities were not of a dishonest character. There can be little doubt that if Krupnick had not been engaged in union activity his employer not only would have had the legal power, but would have been amply justified in dismissing him from his service. There can also be little doubt that

union membership or activity does not confer an immunity against the consequences of continued misconduct after repeated warnings.

The fact that Krupnick had been merely reprimanded and rebuked on prior occasions for similar irregularities cannot debar the employer from terminating the service if the employe persists in his improper behavior. An employe's continued flouting of the reasonable rules and regulations of his employer's business, no matter how long continued, can never ripen into a license or vested right to continue his misconduct with impunity. This is not a case where an employer has indulged a wrongdoing employe by repeatedly overlooking breaches of duty by the latter, thereby lulling him into the false belief that he may continue to test his employer's patience indefinitely. Such cases virtually amount to an entrapment, and in good conscience the employer must be estopped from asserting the full measure of his rights. He will not be permitted, without prior notice or warning, to take advantage of the remissness of his employe which he encouraged by his prior indulgence. This, we repeat, is not such a case. Krupnick had been reprimanded and cautioned to abide by the company's rules. His dismissal should not have come as a complete surprise to him.

Defendant's manager, Max Schulman, testified that he had recommended dismissal because of the recurring violations of the company's rules, and the fact that he was a member of the union had nothing to do with it. The two company officials who had terminated the agency contract testified that they had no knowledge that Krupnick was a union member, and that he was not dismissed because of union membership or activity.

Good cause existed for terminating the agency contract. The employer's affirmation, therefore, that its reason for dismissing Krupnick was not the fact of union membership is credible, and thrusts the burden

of proof on Krupnick to establish that the motive for the dismissal was, in fact, his union activity. This burden he must meet by substantial and legally credible evidence: Union Trust Company of Pittsburgh's Petition, 342 Pa. 456 (1941); Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398 (1942).

The board found such evidence in the following combination of circumstances:

1. An address had been delivered by the president of the respondent company evincing, if not hostility, at least an unfavorable attitude toward the existence of unions in the insurance business.

2. Krupnick was the first agent in the district to join the union and was very active in its affairs.

3. Manager Schulman had requested one of the union men to propose to the other members of the union that they refrain from wearing their union buttons at a meeting of the respondent attended by the president, subordinate officials, manager, and agents of the respondent. Schulman told Krupnick, however, that it was a matter of indifference to him whether the agents wore buttons or not.

4. Manager Schulman had told a grievance committee of agents, of whom Krupnick was one, that the men could not tell him how to run his business, and that he would deal only with the men individually.

5. Krupnick was given a letter of dismissal on Friday, November 25, 1938. The assistant manager told him at that time that he did not know the cause of the dismissal, and that he would have to wait until Monday, November 28, 1938, to see Manager Schulman. On that date, Schulman told him that his contract had been terminated because of irregularities and a deficiency of approximately $25.48 in his debit.

6. One of the rules of the respondent's business was that an agent is to be suspended by the auditor if there be a total net deficiency in the agent's debit of $50 or over.

7. Krupnick's name appeared on the respondent's monthly list of "leading agents" for the month of May 1938 and he was ninety-second leading industrial insurance agent of the respondent in the country for that month.

8. Manager Schulman had telephoned a Mrs. Hoffman, the wife of one of its agents who was a member of the union, and told her that her husband's record was low, and that though he could not be discharged because of union activities nevertheless he could be discharged.

9. There were other agents in the district who had deficiencies and were not discharged. However, the legal inconsequence of this finding is attested by the fact that other members of the union were retained, and the contracts of two non-union men were terminated for deficiencies and irregularities less flagrant than those committed by Krupnick.

10. After Krupnick's dismissal, two of respondent's agents resigned their membership from the union.

By piecing together all of the foregoing items of evidence, the board predicated thereon the inference that Krupnick was dismissed because of his union activities, and accordingly directed his reinstatement.

Since the respondent has given a readily comprehensible reason for the dismissal, as we have already said, the burden is on Krupnick to prove by substantial and legally credible evidence that his agency contract was terminated because of his union activity. In our view, he has not succeeded in sustaining this burden. The inference that he was discharged by reason of his union membership cannot reasonably be derived from the evidence. At best, suspicion arises that perhaps he was discharged for the reason aforesaid. In Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., supra, the Supreme Court said (p. 400) :

" 'Substantial evidence is more than a mere scintilla. It means such revelant evidence as a reasonable mind might accept as adequate to support a conclusion':

*Consolidated Edison Co. v. National Labor Relations Board,* 305 U. S. 197, 229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': *National Labor Relations Board v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300. . . . 'Suspicion may have its place, but certainly it cannot be substituted for evidence': *Union Trust Co. of Pittsburgh's Petition,* 342 Pa. 456, 464. . . ."

The most that can be said for the evidence adduced on Krupnick's behalf is that it suggests a possible motive for his dismissal. This, however, cannot negate the fact that there could be another, at least equally probable, motive for his discharge: his persistent violations of the rules and regulations of his employer's business. The proofs therefore contain, assuming the strongest case on Krupnick's behalf, two equally probable motives, one of them proper and legal, the other improper and illegal. In such case, it is quite clear that he who has the burden of proving and isolating the operating motive has not succeeded in doing so.

Accordingly, in accordance with the foregoing opinion, we affirm the board's conclusions nos. 1, 2, and 3 which, in effect, find that the Metropolitan Life Insurance Company is an "employer", the Insurance Guild Local 22 is a "labor organization", and that Abraham E. Krupnick is an "employe" within the meaning of the Pennsylvania Labor Relations Act.

We overrule conclusions nos. 4 and 5 which, in effect, find that the Metropolitan Life Insurance Company has interfered with, restrained, and coerced its employes in the Schuylkill district office, Philadelphia, Pennsylvania, in the exercise of rights conferred upon them by the Pennsylvania Labor Relations Board, and dismissed Abraham E. Krupnick from its employ because of his union membership and activities.

The order and decree of the Pennsylvania Labor Relations Board are hereby set aside.