## Metropolitan Life Insurance Co. v. Insurance Guild, Local No. 22. No. 2

*Owen B. Rhoads*, for Metropolitan Life Insurance Company.

*Louis F. McCabe*, for Insurance Guild, Local No. 22.

*George L. Reed* and *Alex Satinsky*, for Pennsylvania Labor Relations Board.

CARROLL, J., July 21, 1943.—This proceeding arises out of the claim before the Pennsylvania Labor Relations Board of one Mark Lotke who was employed in the capacity of agent by the Metropolitan Life Insurance Company, respondent, that he was discharged

from his employment on December 10, 1938, because of union activity, in violation of section 6(1) (*a*) and (*c*) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.6. The charge was filed by Insurance Guild, Local No. 22, United Office and Professional Workers of America with the Pennsylvania Labor Relations Board on December 20, 1938, and from that date thenceforth until March 5, 1943, the date on which the final decree was entered, a period of 4 years 2 months and 15 days, this matter remained undetermined by the Pennsylvania Labor Relations Board. The taking of testimony consumed six days, viz, January 9, 10, February 3, 17, 23, and July 15, 1939, when the taking of the testimony was concluded.

On February 5, 1941, a decision and order was made by the Pennsylvania Labor Relations Board which directed the respondent insurance company:

1. To cease and desist from in any manner interfering with or restraining its employes in the Southwark District Office, Philadelphia, to bargain collectively, etc.; and

2. To cease and desist from in any manner discouraging membership in the labor union known as Insurance Guild Local No. 22 by discriminating, etc.; and

3. To reinstate Mark Lotke to his former position and pay him back wages equal to those which he would have earned during the period from the date of his discharge to the date of said offer of reinstatement, less moneys earned by him during the said period, etc.

To this order of the board exceptions were filed which were not disposed of by the board until March 5, 1943, on which date a final decree was entered dismissing the exceptions and making absolute and final the order of the board. From this final order and decree the matter comes before this court on a petition by the Metropolitan for review and a petition by the Pennsylvania Labor Relations Board for enforcement of its order.

In determining the questions raised in this appeal, it is first necessary to consider the duty placed by the Pennsylvania Labor Relations Act upon the common pleas court reviewing the board's finding. Our consideration of this matter is controlled by the decision of the Supreme Court in Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398 (1942), at pages 399, etc.:

"We approach consideration of the case with full realization of the limited scope of appellate review in such a proceeding. The amendatory act of June 9, 1939, P. L. 293, section 9(b), provides that 'the findings of the board as to the facts, if supported by substantial and legally credible evidence, shall . . . be conclusive'. This means that it is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances: *National Labor Relations Board v. Nevada Consolidated Copper Corporation*, 62 Sup. Ct. Rep. 960; *Agwilines, Inc., v. National Labor Relations Board*, 87 Fed. 2nd 146, 151; *National Labor Relations Board v. Moore-Lowry Flour Mills Co.*, 122 Fed. 2d 419, 422. Upon judicial review, however, it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': *Consolidated Edison Co. v. National Labor Relations Board*, 305 U. S. 197, 229. 'Substantial

evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292, 300. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power': *National Labor Relations Board* v. *Thompson Products, Inc.*, 97 Fed. 2d 13, 15; *National Labor Relations Board* v. *Union Pacific Stages, Inc.*, 99 Fed. 2d 153, 177. 'Suspicion may have its place, but certainly it cannot be substituted for evidence': *Union Trust Co. of Pittsburgh's Petition*, 342 Pa. 456, 464, 20 A. 2d 779, 782.

"Our inquiry in the present case, therefore, is directed to the sole question whether the evidence produced at the hearings before the Labor Relations Board justifies, in the light of the above principles, the conclusion reached by the board and by the court below that Kaufmann Stores violated the Labor Relations Act in discharging Richards from its employ."

This pronouncement of the Supreme Court, so clearly and adequately expressed by Mr. Justice Stern, is the yardstick for the guidance of the common pleas courts. This "substantial evidence" rule is not peculiar to Pennsylvania. It harmonizes with the rule laid down by the Supreme Court of the United States interpreting the National Labor Relations Act, which was the model for the Pennsylvania legislation. In fact, there is stronger authority for the Pennsylvania rule. While the Federal rule is the interpretation given the act of Congress by the Supreme Court of the United States (National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 299 (1939)), the Pennsylvania act expressly provides that the finding of the board shall be conclusive "if supported by substantial and legally credible evidence" (section 9 (*b*), Pennsylvania Labor Relations Act, supra, relating to judicial review). See the recent case of Cravis v. Pennsylvania Labor Relations Board, C. P. 6, June

term, 1942, no. 1198 (not reported), in which President Judge Bok of Court of Common Pleas No. 6 of Philadelphia County reversed the decision of the Pennsylvania Labor Relations Board on the ground that the evidence necessary to sustain the finding of the board was not sufficient, citing Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., supra.

A careful review of the record herein has convinced the court that the findings of the board are based on evidence which is not substantial. The burden of proof rests upon the one alleging a violation of the Pennsylvania Labor Relations Act and this burden is not met by a mere scintilla of evidence or a suspicion that the motivating cause of dismissal was union activity. On the other hand, respondent, in replying to the evidence adduced by plaintiff, produced substantial evidence, not contradicted, which clearly indicates that Lotke was discharged for good and sufficient reasons. Respondent's evidence, in many instances admitted or uncontradicted, established numerous and repeated serious violations of common rules throughout 1938; commission of acts which might well have been construed to be violations of penal law (see Act of June 23, 1931, P. L. 904, sec. 1, 40 PS §518) ; infractions by Lotke prior to 1938 so serious that from October 1934 until January 24, 1938, he was denied the privilege of completing the inspection of nonmedical and industrial applications; and other irregularities during March of 1937 for which he was suspended from employment for a period of nine days. In considering this case it is significant to note that Lotke's conduct and the disciplinary measures taken by Metropolitan occurred before he joined the union in October 1937.

Notwithstanding the penalties imposed upon him for the many irregularities he committed and the expression of his guilt and contrition which appears in his own handwriting in a letter dated March 22, 1937, addressed to his superior, Louis J. Zettler, superin-

tendent of agencies, he nevertheless followed the same course of conduct, committing violations of company rules up to the time of his dismissal. In this letter, he wrote:

"I have seriously considered the irregularities involved in the above cases. I have earnestly decided to be more careful and selective in considering applications. And also to have decided to be more serious in my attitude towards the entire business. Therefore I hope you will consider my immediate reinstatement . . . I assure you that in the future no further irregularities and inconsiderations will be done by myself . . . P. S. Mr. Goldstein [Agency Manager] has repeatedly warned me to be more careful but I have failed to heed his remarks until this suspension has made me realize that a different attitude would have to be taken by me to continue in the business successfully. This I have decided to do without reservation."

The evidence discloses that Lotke's employment commenced in December 1933; that he was given inspection privilege in June 1934; that this privilege was withdrawn in October 1934, as a result of his irregularities; that this inspection privilege was restored on January 24, 1938, when he had already been a member of the union for more than three months.

Notwithstanding Lotke's expression of contrition, which appeared in his letter, part of which is referred to above, his predilection to irregularities and violation of company rules continued. These occurred many times during his period of employment before his membership in the union in October 1937 and many times following this date, continuing to and culminating in his final dismissal. The record discloses a series of irregularities committed after his union membership, including failure to complete applications; noting incorrect addresses; altering applications; procuring signature other than the applicant's thereon; falsely certifying to information in applications; insertion of

misleading facts in applications; failure to inspect the risk upon the delivery of the insurance contract; falsifying forms of the company; forgery of a dividend check. These violations pertained to a minimum of 11 separate insured during 1938. It is to be noted also that during that period these acts occurred Lotke himself was endeavoring to secure promotion within the company organization. It is manifest that these irregularities were not apparent to the officials of Metropolitan directly following their commission.

At this time, however, the actions of Lotke were under examination by the investigation division of Metropolitan. On November 16, 1938, Lotke made a written request for promotion. Quite naturally this necessitated a review of his service record, thereby bringing into sharp focus this latest series of irregularities discovered by the investigation division of the company. All of this history was before Mr. Zettler, superintendent of agencies, to whom Lotke had addressed his letter seeking promotion. No doubt Zettler had some information of Lotke's early history but undoubtedly the recent events were unknown to him before he had the report of the investigators. The last violation, which occurred shortly before Lotke's request for promotion, was a forgery he had committed in connection with an insured named Wanger. This incident alone would have justified his dismissal. However, his request for promotion disclosed a series of reasons for the dismissal which followed.

It seems to the court that Lotke himself was under no disaffection by reason of his union membership or activity so far as his employer was concerned for had he been he hardly would have sought promotion.

In the field of labor relations, it is a well-settled and universally-accepted rule that the right to discharge for cause, such as violation of company rules, inefficiency, insubordination, etc., has not been taken away from the employer by reason of the passage of labor relations legislation.

In support of the right to discharge for violation of company rules, see National Labor Relations Board v. Williamson-Dickie Mfg. Co., 130 F.(2d) 260 (1942), wherein it was held that the board was not authorized to substitute its own judgment for that of the employer in determining what was sufficient cause for discharge. The court stated (p. 264) :

"In respect of the unfair practices in question the controlling fact question is whether the evidence supports the ultimate findings that the employees in question were discriminated against, that is, were treated differently from employees similarly situated. . . ."

In that case one of the employes, a union member, was discharged for circulating petitions in the company plant, which was in direct violation of the rules of the company.

Also in Quaker State Oil Refining Corp. v. National Labor Relations Board, 119 F.(2) 631 (1941), a decree of the National Labor Relations Board reinstating with back pay an employe found to have been discharged for union activities was set aside on the basis that the evidence was not substantial enough to support the board's finding. The evidence showed that he was engaged in union activity. It also showed that he worked as a bartender, which was in direct violation of the company's rule requiring its employes to refrain from outside work. It appeared also that he had persisted in this outside work and had been warned a number of times about it. The Circuit Court of Appeals, by Judge Maris, determined that even though no other employes had been so severely punished for similar infractions this was not sufficient to sustain the action of the board in view of his repeated violations of the company rule.

In National Labor Relations Board v. Illinois Tool Works, 119 F.(2d) 356 (1941), an employe who was engaged in union activities was discharged after repeated warning for violating the safety rule of the

company requiring him to wear goggles. This action by the company was held by the board to be discriminatory. The petition of the National Labor Relations Board to enforce its order was refused, the court finding that the cease and desist order was not warranted.

The acting solicitor for the Pennsylvania Labor Relations Board, George L. Reed, Esq., who as co-counsel has presented the position of the board so exhaustively in this case, in speaking of the National act, has stated in his useful work "Law of Labor Relations", published in 1942, at page 128, sec. 9, as follows:

"The act has not deprived the employer of his right to discharge an inefficient or disobedient employee. An employee may be discharged for violation of the proper rules, regulations or policies of the employer. Interference with the right of the employer to determine when an employee is inefficient should not be lightly indulged in by the Board. Where there is no precedent for treatment of an employee's admitted second violation of a rule, the employer is free to discharge the employee, if the employer thinks that the discharge is proper in order to enforce the rule . . ."

In examining the decisions cited supra, the violations which occasioned the discharge were the violations of a single rule of the company and were of a nature less flagrant than the repeated and continuous violations in the instant case.

Furthermore, the fact that the Metropolitan through its employes is conducting a business affected with a public interest and as such is subject to statutory regulation is to be kept in mind. In Long v. Sakleson et al., 328 Pa. 261, 270 (1937), it was held:

"It has long been held that a state has the right to regulate the business of insurance. It is a business affected with vital public concern, and the state has full power to protect its citizens from the conduct of the business by those engaging in it irresponsibly or

fraudulently: 2 Cooley, Constitutional Limitations (1927), p. 1132. Individuals and associations of this and of other states must comply with our laws for the transaction of such enterprise within the borders of the state in so far as they are reasonable: *Commonwealth v. Vrooman,* 164 Pa. 306; and see *Arrott v. Walker,* 118 Pa. 249."

Therefore, violations of company rules that in part are aimed to carry out the requirements of the law of the Commonwealth cannot be taken lightly by the Pennsylvania Labor Relations Board. We find a parallel to this in the case of the Texas Co. v. National Labor Relations Board, 120 F. (2d) 186 (1941), where the circuit court of appeals refused to enforce an order of the National Labor Relations Board (19 N. L. R. B. 835 (1940)), directing the reinstatement with back pay of a drunken boatswain upon the ground that the board misconceived the relation between the master and his crew and ignored the tenor of Federal legislation enacted for the protection and security of those aboard vessels.

We have examined carefully all of the testimony relating to the union activities of Lotke and the alleged interference therewith. It appears that the extent of Metropolitan's interference with such activity was that developed in the five separate conversations between him and Manager Goldstein and Assistant Manager Heller. All of the testimony on this point came from Lotke himself and the subject matter of two of the conversations was expressly denied by Goldstein. It was from these conversations related by Lotke that the board made its findings and it is important to note that in at least one of these conversations, which occurred in February of 1938, Lotke stated that Manager Goldstein had informed him and two other agents that their outside activities (presumably union) were affecting their work with the company and that Goldstein was going to do something about it. It is singular

that the other agents who were present at that time were not called in corroboration of this important fact. It seems to us that evidence of such nature and on which so much reliance is placed cannot be classified as "substantial evidence" when there is a distinct failure to corroborate it by available testimony. It is to be noted, too, that the last of these conversations occurred in April of 1938 and the date of the dismissal notice was on December 3, 1938. There is nothing in the entire record after April 1938 concerning any comment by Metropolitan pertaining to Lotke's union activity.

The only remaining evidence relates to the alleged policy of the Metropolitan toward union activity. In order to establish a policy inimical to self-organization and collective bargaining and general union activity, there was introduced in evidence a copy of an address delivered by Leroy A. Lincoln, president of Metropolitan, to the company managers at the annual convention in New York City on February 7, 1938. The complete text of this address appears in a booklet as respondent's exhibit 17. It has to do with phases of an agent's activity and denies that a company union is being formed by the officers of the company with the money of policyholders. The president made the point that by reason of the very nature of the occupation of an insurance agent (Metropolitan agent) the principle of trade union organization could not be made applicable. His address presented the very definite point of view of an insurance executive that the occupation of a life insurance agent was not within the purview of either the National Labor Relations Act or the various State labor relations acts. In the light of subsequent judicial determination this viewpoint was legally unsound. But we do not believe that this address of the president of Metropolitan, delivered on February 5, 1938, to a group of company managers, constituted actual interference with the right of self-

organization and collective bargaining on the part of the agents of Metropolitan.

In its opinion the board stated that this address "constitutes an interference with the guaranteed rights of employees within the meaning of Sec. 6 (1) (a) of the Pennsylvania Labor Relations Act." We do not think that this conclusion by the board is substantiated by the speech in general or any part of it in particular.

Reviewing all of the testimony offered on behalf of complainant, it seems clear to us that complainant has failed to establish by substantial and legally credible evidence its contention that the motivating cause of Lotke's dismissal was his union activity. In fact, complainant's contentions, in the court's view, were not even established by a fair preponderance of the evidence. It is interesting to note that counsel for the board, in discussing in their brief the Metropolitan's reason for discharge, placed the board's decision on a ground no higher than "suspicion" in stating that "suspicion is properly attached to Metropolitan's alleged reason for discharge"; and elsewhere in the same brief board's counsel conceded that "the board could have concluded that the alleged reason for the discharge", meaning, of course, the conduct of Lotke over a period of years both before and many months following his union activity.

In the light of our previous determination, it is unnecessary for us to consider at length the validity of the award for back pay extending from December 3, 1938, the date of dismissal, up to the present time and to such future time as reinstatement is offered to Lotke. Had it been successfully established that Lotke was discharged in violation of the Pennsylvania Labor Relations Act, we are inclined to the conclusion that the award of back pay from December 3, 1938, is in denial of due process of law within the meaning of the Federal and State Constitutions, since all the evidence

in the case was concluded on July 15, 1939, and there is lacking any legal excuse for the failure of the Pennsylvania Labor Relations Board to hand down an adjudication directly thereafter. Certainly 10 months was ample time within which to enter an order and dispose of the exceptions in this case. Had the findings of the board that Lotke was discharged for union activity been sustained by substantial evidence, the court would have been compelled to modify the order so that the back pay would not have extended beyond 10 months from December 3, 1938, plus the additional time that the case was in the common pleas court for determination, and plus such time until the offer of reinstatement was made.

In Metropolitan Life Ins. Co. v. Insurance Guild, Local No. 22 (No. 1), 48 D. & C. 355, an opinion filed by this court in this case on May 14, 1943, disposing of other matters, we made this comment (p. 357) :

"Such delay [four years after the taking of all testimony], without any apparent reason, contravenes not only the spirit but one of the very purposes of the act of assembly. The attainment of the ideals of freedom from want and freedom from fear will be delayed and retarded by labor disputes that are long extended by the litigants or unduly prolonged by the judicial process."

To effectuate swifter justice, the Supreme Court of Pennsylvania by Rule 93 requires the prothonotaries or clerks of the various courts of record throughout the Commonwealth to report in writing to the Prothonotary of the Supreme Court for the Eastern District, not later than the tenth day of each calendar month, for the period ending with the last day of the preceding calendar month, all cases which have been submitted to any judge or judges for decision and which have remained undisposed of for 30 days or more after submission to such judge or judges. This rule further provides in section 4 that the judge having the matter

in hand or the senior judge of the court en banc to which the matter was submitted shall report forthwith in writing the cause of the delay to the Chief Justice of the Supreme Court, where any matter so submitted has remained pending and undisposed of at the end of 90 days after its submission. There appears to be no like supervision of the Pennsylvania Labor Relations Board. There is the legislative mandate for the prompt disposition of matters by the board. Section 8 (e) of the Pennsylvania Labor Relations Act, supra, states: "The proceedings before the board or before any of its examiners shall be conducted with speed and dispatch"; and in section 9 (e) governing judicial review it is provided: "Petitions filed under this act shall be heard expeditiously and, if possible, within ten days after they have been docketed." In the case of John Hancock Mutual Life Insurance Company of Boston v. Pennsylvania Labor Relations Board, 45 D. & C. 169 (1942), where the charge was filed in January 1936 and the final order of the board was made in May of 1940, Judge Levinthal said (p. 177) :

"The person filing the charges and the board, on issuing the complaint, are under the duty to see that the interest of the public is preserved and protected. They should, therefore, exercise reasonable diligence in prosecuting the case and having it expeditiously disposed of."

In commenting on administrative procedure, Chief Justice Hughes, speaking for the Supreme Court of the United States in the case of Morgan et al. v. United States et al., 304 U. S. 1, held that the essence of due process of law is fair play.

In Reed's Law of Labor Relations, p. 202, sec. 20, it is stated:

"It has been said that an order of reinstatement with back pay will be unreasonable with respect to amount, in view of an employer's limited capital and the amount of time consumed by the board in determining the action."

This principle is supported by the case of Folding Furniture Works, Inc., v. Wisconsin Labor Relations Board, 285 N. W. 851 (1939), wherein it was held, at page 857:

"The order for back pay was beyond the power of the Board to make because of the enormity of the amount ordered. The amount required by the order is approximately $100 a day less earnings since discharge, if any. The testimony before the hearing chairman was taken on September 1st and 2d. The Board's order was dated October 27th. Thus the $100 a day was running approximately fifty work days according to the Board's order before the company had any opportunity to comply with the order and thus stop its running. The amount of back pay ordered should not depend on the time the Board took to decide the case."

In that case $6,000 had accumulated from the discharge to the time of the taking of the testimony and $5,000 from the taking of the testimony until the final order of the board. The court held that such order was confiscatory and not necessary to effectuate the policies of the act.

Lotke's employment with the company was under a written contract which could be terminated by him on one week's notice or by the company summarily for breach or on two weeks' notice without any cause whatsoever. Constitutional safeguards prevent a potential liability of this two-week contract from becoming an ultimate liability for compensation for four years and more—projected to a point of time in the future still undetermined.

Accordingly, the appeal of the Metropolitan is sustained, the order of the board is set aside, and the petition of the board to enforce is dismissed.