## Pennsylvania Labor Relations Board v. Steckline, etc.

*George L. Reed*, Special Deputy Attorney and *Frank F. Truscott*, Attorney General, for Pennsylvania Labor Relations Board.

*Harry P. Creveling*, for appellant.

HENNINGER, P. J., August 2, 1954.—Defendant is the operator of two de luxe diner restaurants in the City of Allentown. When he opened the second diner at Sixth and Linden Streets on October 1, 1953, he hired among others, two waitresses, Mrs. Helen Gilliard and Miss Doris Romig.

On November 6, 1953, Mrs. Gilliard joined the Bartenders, Hotel & Restaurant Employees Union, Local 391, A. F. L., to which Miss Romig had belonged for two years, and both waitresses took along application cards for other employes. Miss Romig solicited fellow employes to join the union. On November 10, 1953, Mrs. Gilliard was discharged by a Mr. Freed, manager of the Sixth and Linden Streets diner and on November 11th Miss Romig was discharged.

On November 11th, Frank Stern, business agent and secretary of the union questioned Mr. Freed over the telephone about the discharges and about working conditions at the diner. Mr. Freed said Mrs. Gilliard was discharged because of the return of another waitress, that Miss Romig was discharged for insubordination and, when questioned about working conditions, Mr. Freed stated he would not have the union dictating to him.

Later Mr. Stern tried to contact Mr. Steckline, who did not answer his telephone call. Mr. Steckline was reported as having stated a few weeks after the waitress' discharge that no one belonging to the union would work at his place.

Respondent was cited for having committed an unfair labor practice in violation of section 6 of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended July 7, 1947, P. L. 1445, 43 PS §211.6.

At the hearing before the examiner, the above stated facts were testified to and besides it was shown that when Mrs. Gilliard was discharged, ostensibly because her services were no longer needed, Steckline's was advertising for help. Against her it was testified that she violated rules, objected to practices and that it was reported she was not honest. Against Miss Romig there was a specification of rudeness to guests, vulgarity and impertinence.

The board sustained as findings of fact all of the testimony against respondent and gave recitals of respondent's testimony without finding any facts therefrom, but referring to seeming inconsistencies.

Under the heading "Conclusions", the board found that respondent was an employer and the waitresses employes under the act and continued with conclusions 3 and 4 as follows:

"That Charles Steckline, trading and doing business

as Steckline's Diner, has interfered with, restrained and coerced his employes in the exercise of their rights to self-organization and collective bargaining within the meaning of section 6, subsection 1, clause (*a*), of the Pennsylvania Labor Relations Act.

"That Charles Steckline, trading and doing business as Steckline's Diner, has discriminated against Helen M. Gilliard and Doris Jean Romig, two (2) of his employes, in regard to tenure of employment, within the meaning of section 6, subsection 1, clause (*c*), of the Pennsylvania Labor Relations Act."

We note (1) that the examiner and the board call attention to seeming inconsistencies in the testimony of respondent and his manager; (2) that the management has expressed displeasure at what they termed union interference in their work; (3) that the waitresses were discharged four days after they began union activity. There is no finding that the waitresses were discharged either for joining the union or for union activity.

This omission may be due either to inadvertence or because the examiner and board felt that the conclusion that respondent violated the cited sections of the Pennsylvania Labor Relations Act constituted such a finding.

We cannot adopt the latter view. The findings are in what is styled a "Nisi Decision and Order." This so closely resembles an adjudication in equity or the decision of a judge sitting without a jury that we cannot escape the belief that "Conclusions" represent conclusions of law as distinguished from findings of fact. This view is strengthened by the first and second conclusions that respondent is an employer and the waitresses employes. As a fact, their relationship is assumed throughout the findings and excepting as a conclusion of law, there is no need for repeating the relationship.

As conclusions of law, conclusions 3 and 4 are invalid for they have no facts to sustain them. To hold them valid one would have to say that the law of Pennsylvania is that whenever the four elements of inconsistencies, dislike of unions, union activity of employes and discharge of employes concur, there is ipso facto a violation of the Pennsylvania Labor Relations Act and an unfair labor practice.

That cannot be the law of Pennsylvania, for our courts have held that despite the provisions of the Labor Relations Act, an employer may discharge his employes for any reason appealing to the employer, excepting only for union activity, or for no reason at all.

It is obvious that all of the above elements may coincide and yet there may be no relation whatsoever between the union activity and the discharge of employes.

Throughout the board's brief, the conclusions are called conclusions of fact, although they are not so designated in the decision itself. There is some support for this usage in Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398, where in relation to inferences, the Supreme Court stated (p. 400) that the court could determine "whether the *conclusions* deduced therefrom are reasonable and not capricious." We believe, however, that in that opinion the word "conclusion" was used as a term in logic and not in its technical use as a statement of law in a court's decision.

Conclusions 3 and 4 are just as faulty as conclusions of fact as they are as conclusions of law, for they fail to state just what respondent may have done that constitutes an unfair labor practice. Granting that the board has the right to make inferences from the substantial and legally credible evidence (Pennsylvania Labor Relations Board v. Kaufmann Stores, supra,

p. 400, and numerous other cases), and that the court may not substitute its own inferences, although equally logical (Max Pisarev Co. v. Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 195, 345 Pa. 123, 124), the board in making inferences must do something more than apply any mere rule of thumb to any given statement of facts.

We can conceive of two cases with exactly the same evidence in cold black and white on the record, in which inferences of opposite import might be reached.

Taking the facts of this case, it is conceivable and possible that an employer, who might have expressed a dislike for unions generally and for the one in his line of work particularly, may have discharged employes shortly after their engagement in union activity without knowledge of such activity and for reasons, valid or not, bearing no relation whatsoever to his dislike of unions or to the employes' union activity. He may have used white lies as to the reason for discharge either to avoid a scene or to salve hurt feelings or, as might be the case here, because his cause for discharge is based on rumor or suspicions, which makes the employe a hazard in the business, but for which he has no absolute proof. If the examiner believes those facts, no inference of unfair labor practice arises, despite the concatenation of suspicious circumstances.

There is a vast difference between the right to draw an inference and the duty to draw the right inference. An examiner has no right to evade his responsibility by clothing his inferences in the broad terms of the exact wording of the act.

In the leading case of Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., supra, the duties of the board and therefore of its examiner are outlined as follows (p. 400):

"It is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances."

What we must know is, "Did Steckline or his manager discharge these waitresses because of their union activity?" That is a finding that can be made only by the trier of the facts who saw the witnesses and heard them testify. It may be true that he arrives at that fact by inference, but before the board or the court can act the fact of improper discharge must pass from the realm of possibility to that of the honest conviction of the examiner. After the examiner has set his seal of credence on the fact, gained through inference from other facts, then it itself becomes a fact in the case and should be so labeled.

Without a finding of fact that respondent discharged his employes because of their union activities, we cannot sustain the conclusions of a violation of the labor law upon which the order rests. We have the power, under such circumstances, to sustain the appeal and reverse the order.

Cases of this kind, however, involving valuable rights of employment should not be decided upon technicalities. If the board, from the evidence in the case, has the conviction that these employes in this particular case actually were discharged for union activity, it ought to be given the opportunity to make such a finding. In passing on that question they will, of course, study carefully the implications in Mr. Justice Chidsey's opinion in the very recent case of Pennsylvania Labor Relations Board v. Sansom House Enterprises, Inc., 378 Pa. 385, where the mere presence of union activity was held, under the circumstances of that case, not to provide the substantial and legally credible

evidence necessary to support an inference that the employes' discharge was an unfair labor practice.

We have deliberately refrained from applying the Sansom House case to our facts, which we consider incomplete. The board must perform its full function first and only then can we decide whether there is the necessary foundation for their findings.

While section 9 of the Pennsylvania Labor Relations Act, 43 PS §211.9, does not specifically provide for reference back to the board, such procedure was sanctioned in Pennsylvania Labor Relations Board v. Frank, 362 Pa. 537, 546, and in Pennsylvania Labor Relations Board v. Yellow Cab & Bus Co., 31 North. 341, 359.

Now, August 2, 1954, the above-captioned matter is referred back to the Pennsylvania Labor Relations Board for the purpose of making such definite findings of fact as may be justified upon the substantial and legally credible evidence before that board in accordance with this opinion.