**Pennsylvania Labor Relations Board v. Pleasant Valley School District**

*James F. Wildeman* and *James L. Crawford,* for Pennsylvania Labor Relations Board.

*Lester T. Brown,* for appellant.

WILLIAMS, P.J., August 2, 1974.—In January 1973, the school district and the teachers' union began contract negotiations which were not concluded until August 1973. Until June 1, 1973, Mark Newman was the chief negotiator for the teachers' union.

Mark Newman, along with his classroom duties, was first assistant football coach. He, and all the other coaches of athletics at the school, were in disagreement with the board's rules and regulations dealing with the school's athletic program.

On May 24, 1973, all coaches submitted a written resignation which stated:

"With deepest regret, but in keeping with our previous letter, we now submit our resignations as coaches at Pleasant Valley Junior Senior High School effective immediately."

On May 31, 1973, Newman was advised by his supervising principal that he would not be rehired as assistant football coach for the year 1973-74. All other assistant coaches were rehired, except one who declined to be rehired.

Mark Newman had also been assigned to the duties of a supervisor in a summer sports program during the

year 1972-73, and he was not reassigned to these duties in 1973-74.

The Pennsylvania Labor Relations Board issued a nisi decision and order wherein it found that respondent had engaged in unfair practices in violation of article XII, sec. 1201, subsection (a), clauses (1) and (3) of the Public Employe Relations Act of July 23, 1970, P. L. 563, 43 PS §1101.101, et seq., hereinafter referred to as the "act."

On March 19, 1974, by final order, the board reaffirmed its nisi decision and order, dismissing both respondent's exceptions to the nisi decision and order, and petition to reopen the hearing.

The order of the labor board required respondent to reinstate the complainant both to his position as first assistant football coach and also to his position in the summer program, and further ordered payment of wages lost for these positions in the 1973 year.

A timely appeal from the labor board's final order was allowed on April 11, 1974.

Since argument on the appeal, counsel for the complainant and the school board have advised the court that, by agreement, complainant and respondent have resolved all future relations between complainant and respondent, and that the issue requiring a decision of this court relates solely to that portion of the labor board's order directing respondent to pay complainant the compensation he would have earned in the 1973-74 school year had he been assigned to duties in the summer sports program and as first assistant football coach.

Section 1502 of the act, 43 PS §1101-1502 provides, inter alia, that "findings of the board as to the facts, if supported by substantial and legally credible evidence, shall in like manner be conclusive."

As was said in Shive v. Bellefonte Area Board of School Directors, 12 Comm. Ct. 543, 547 (1974):

"Substantial evidence is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398, 29 A. 2d 90 (1942). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Ronnie's Bar, Inc. v. Pennsylvania Labor Relations Board, 411 Pa. 459, 192 A. 2d 664 (1963). However, if a reasonable man could not have reached the decision from the evidence and its inferences, then the decision is not supported by substantial evidence and it should be set aside. A. P. Weaver and Sons v. Sanitary Water Board, 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971)."

One of the reasons which induced the finding by the labor board that respondent engaged in an unfair labor practice is stated as follows:

"(f) These events transpired during a period of time just *following protracted negotiations and a threatened coaches strike,* Mark Newman playing a pivotal part in each. It was also apparent that Respondent's management personnel viewed Mark Newman as a strong force in both movements." (Emphasis supplied.)

Nowhere in its decision does the board discuss or consider the possible legal effect that during protracted negotiations Mark Newman was a strong force in a movement involving what it terms "a threatened coaches' strike." Neither did the board consider the pertinent language of section 1101.1002 of the act:

"Strikes by public employes during the pendency of collective bargaining procedures set forth in sections 801 and 802 of Article VIII are prohibited."

Here, the evidence shows not only a threatened strike by the coaches but an actual strike. All joined in a common resignation to be effective immediately. As complainant testified, his resignation was the result of a group action.

When complainant resigned "effective immediately," he was in violation of his teaching contract.

The school board, under claimant's teaching contract, had a right to assign him to coach football; and, when a teacher refuses to perform the duties to which he has been assigned and for which he is qualified to perform, he is in violation of his contract to teach: Ganaposki's Case, 332 Pa. 550 (1938). See also Johnson v. United School District Joint School Board, 201 Pa. Superior Ct. 375 (1963), where the Superior Court sustained the dismissal of a teacher who refused to attend an "open house" conducted by the school.

It is our opinion that claimant was involved in an unprotected activity when he engaged in a strike as a coach, in that his action constituted a refusal to perform duties to which he was assigned and for which he was qualified to perform. He likewise engaged in conduct prohibited by section 1101.1002 of the Public Employe Relations Act.

In Pennsylvania Labor Relations Board v. Fortier, 395 Pa. 247 (1959), the employer, Fortier, operated two cafeterias. The employe was a countergirl at Plant No. 2. There was a wildcat strike by the employes of Fortier in which she participated. The board found that Mrs. Zimmer had refused an offer of her old job in Plant No. 1 where she had worked prior to being transferred to Plant No.2. The strike was settled and all the employes except Mrs. Zimmer were called back to work. The board found that Mrs. Zimmer did not return to her old job because she was told by Fortier's

attorney, to whom she spoke at Fortier's request, that she was discharged because she called the strike and walked off the job.

The Supreme Court held there was substantial evidence to support this finding and upheld it. The Supreme Court held, however, that the labor board was in error when it concluded "that the employer was guilty of an unfair labor practice in that he violated §6, subsection (1), clause (a) and clause (c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §211-6, which read as follows: '(1) It shall be an unfair labor practice for an employer—(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act. . . (c) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: . . .'"

The court agreed with the employer that the strike was in violation of an existing collective bargaining agreement and was an *unprotected activity,* and that all the strikers were subject to the employer's refusal to reinstate them. In the language of the court, the issue to be decided was:

"Where an employer has a lawful right to re-engage all or to refuse to re-engage any illegally striking employees, can he re-engage some, without re-engaging all?"

The court answered this question in the affirmative, stating, page 255:

"The Supreme Court has answered this question—an employer has a lawful right to re-engage or reinstate those persons whom it desires and to refuse to re-engage or reinstate some or all or any contract-breakers, and such action would not be an unfair labor practice. In National Labor Relations Board v. Sands, 306 U.S. 332, the N.L.R.B. found that the employer

had refused to bargain collectively with representatives of its employees, and had discriminated with regard to hire and tenure of employment, and had discouraged membership in a labor organization, and had interfered with, restrained and coerced its employees in collective bargaining; and that these actions constituted unfair labor practices in violation of §8(5), §8(3), §8(1) and §7, respectively, of the Act. The Supreme Court reversed and held these findings were unsupported by the evidence. The employer had a contract with a union representing its employes which gave it the right to operate its plant on the basis of 'departmental seniority'. *It did not contain a no strike clause.* The union, in violation of the agreement, demanded that the employer abandon 'departmental seniority' or shut down its plant. The employer chose the latter course, and then hired other workmen to take the place of those members of the union who had demanded an end to 'departmental seniority'. The Court sustained the employer's actions and said (pages 344, 345):

" '. . . It was at liberty to treat them as having severed their relations with the company because of their breach and to consummate their separation from the company's employ by hiring others to take their places. The Act does not prohibit an effective discharge for repudiation by the employe of his agreement, any more than it prohibits such discharge for a tort committed against the employer . . .

" 'The offering of re-employment to four of the old employes, upon a new and different basis, is said to constitute discrimination against "Mesa", but the answer is that if the whole body of employes had been lawfully discharged the law does not prohibit the making of individual contracts with men whose prior relations had thereby been severed.' "

There is no direct evidence in the record to show

that the school board's refusal to rehire Mark Newman as a football coach was related to its displeasure with the manner in which he conducted himself as chief negotiator for the teachers' union.

The labor board's findings are based upon inferences which it drew from certain of its findings of fact.

It appears that the school principal did not favor rehiring him because he had, on some five or six occasions, found that he was not at his teaching post when he should have been. Once, he found him observing the film of a football game when he should have been in his classroom. On several occasions, the assistant principal did not find him in his classroom.

We are unable to determine with certainty if the labor board believed this testimony or not. Finding of Fact No. 25 states that the principal "testified" to these matters but does not specifically find them to be true.

Finding of Fact No. 26 states:

"That the Respondent's expressed reason for not rehiring Complainant in the summer program was the same as that set forth regarding the coaching job. (N.T. 93)."

It is clear that the board rejected this testimony as representing the true reason for the respondent's action. But despite the board's finding, it was in error in not concluding that the complainant was engaged in an unprotected activity when he was in the forefront of an illegal strike which was an unprotected activity.

As was stated by the Supreme Court in Fortier, supra, page 256:

"The only action taken by the employer in this case was the refusal to re-engage an employee whom he considered a trouble maker and the leader of an admittedly illegal strike. What is the use of giving, by Act, members of a union special privileges and immunities

if a member of the union can with impunity violate a contract made pursuant to the Act and then claim the protection which the Act gives to those who comply with its terms? We repeat: Neither the illegal strike, nor Mrs. Zimmer as a contract violator, were protected by the Act. See cases hereinabove cited."

The labor board cited Pennsylvania Labor Relations Board v. Sand's Restaurant Corporation, 429 Pa. 479 (1968), to support its undoubtedly correct position that the board's function is to not only appraise conflicting evidence but to draw inferences from established facts, and that the discharge of employes close in time to a display of anti-union animus by the employer, combined with the absence of an insubstantial employer explanation, is a sufficient evidentiary foundation for a finding that the employer has committed an unfair labor practice.

However, the board did not apply another ruling in that case which is pertinent to the issue before us. One of the employes, anticipating she would be discharged because she had been so told by the restaurant cook, said to her employer "Just make up my money and give it to me." The Supreme Court held that this conduct constituted a voluntary resignation of her job; and, since there was no evidence that the employer had authorized the cook to tell the employe that she was discharged, the employer was not required to reimburse her for back pay, as it had been ordered to do by the labor board.

Here, the labor board found as a fact that the complainant, along with all other athletic coaches, resigned as assistant football coach. This being true, he was not discharged; he voluntarily terminated his employment as an athletic coach and, under the holding in Sand's, the board erred as a matter of law in awarding him back pay.

As was held in Fortier, supra, the fact that the school board rehired all the other coaches except one, who resigned, does not help the complainant, since, in resigning, he engaged in an unprotected activity.

While Fortier, supra, was decided prior to the passage of the Public Employe Relations Act, the language of article XII, sec. 1101.1201, clause (a) (1) and (3) is practically identical with the language of section 6 subsection (1), clause (a) and clause (c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, 43 PS §211-6, considered by the court in Fortier, supra. That being true, we are bound to apply the law as set forth in Fortier because the subsequent Public Employe Relations Act in no way abrogates the ruling in that case. In fact, the contrary appears since section 1101.1004 provides:

"An unfair practice by a public employer shall not be a defense to a prohibited strike."

As to the failure of the school board to rehire the complainant in its summer sports program, we have an entirely different situation. The evidence is that the complainant sought the position and the board took no action on the request, which was in effect a refusal to rehire him. Under these circumstances, the rulings in Fortier, supra, and Sand's, supra, are not pertinent.

The labor board has found as a fact that the school board failed to rehire the complainant because of his union activity and had engaged in an unfair labor practice. While this conclusion is based largely on inferences drawn from circumstances rather than direct evidence, we are bound by this finding.

Accordingly, we sustain the award of back pay for the position of a supervisor in the summer sports program.

Since all issues relating to reinstatement of the complainant have been amicably resolved by the parties, our order will deal only with the right of complainant to receive back pay.

### ORDER

And now, August 2, 1974, the order of the Pennsylvania Labor Relations Board awarding back pay to the complainant as assistant football coach for the year 1973-74 is reversed. The order of the Pennsylvania Labor Relations Board awarding back pay to the complainant for the 1973 summer sports program is sustained. Accordingly, Pleasant Valley School District is ordered to pay Mark Newman the sum of $270 as back pay as a result of his discontinuance as a supervisor in the summer sports program for the summer of 1973.