# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas K. Hamilton, : 
               Petitioner : 
                : No.  1063 C.D. 2017
         v. : 
                : Argued:  September 12, 2018
Pennsylvania State Employees : 
Retirement Board, : 
               Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH                               FILED:  October 3, 2018


        Thomas K. Hamilton (Petitioner) petitions for review of the July 5, 2017 order of the Pennsylvania State Employees' Retirement Board (Board), which denied Petitioner's request to reject the July 3, 2012 beneficiary nomination form of Robert Kinser (Decedent).


## Facts and Procedural History

        Decedent became a member of the State Employees' Retirement System (SERS) effective August 23, 1999, by virtue of his employment with the Pennsylvania Higher Education Assistance Agency (PHEAA).  On that date, Decedent executed a SERS beneficiary nomination form naming his brother, James Kinser, as his sole principal beneficiary.  On March 28, 2006, Decedent filed a second beneficiary nomination form naming his friend, Petitioner, as his sole

beneficiary. On November 15, 2010, Decedent filed an application for annuity. Decedent elected to receive an Option 1 annuity and again designated Petitioner as his sole beneficiary.[1] SERS acknowledged and approved this application from Decedent on November 16, 2010. (Board op. at 2-3.)

On July 3, 2012, SERS received a retired member beneficiary nomination form purportedly executed by Decedent, which named Michael Connors as his sole beneficiary. SERS acknowledged and approved this form on July 12, 2012. SERS did not receive any further documents changing Decedent's beneficiary designation after this date. (Board op. at 3.)

Decedent passed away on June 21, 2015, leaving a death benefit payable of approximately $66,000.00. At the time of Decedent's death, he and Petitioner had been friends for 15 to 20 years and Petitioner had power of attorney for Decedent. On June 22, 2015, Petitioner notified SERS' Harrisburg Regional Counseling Center of Decedent's death. By letter dated July 2, 2015, SERS reached out to Connors, Decedent's last named beneficiary, requesting information to begin processing the payment of the death benefit. However, this letter was returned to SERS as undeliverable. (Board op. at 3-4.)

On July 7, 2015, SERS received a letter from Petitioner requesting that it investigate the authenticity of Decedent's July 3, 2012 retired member beneficiary nomination form, *i.e.*, the form naming Connors as beneficiary. By letter dated July 10, 2015, SERS notified Petitioner that he was not listed as Decedent's beneficiary,

---

[1] Under an Option 1 annuity, SERS calculates a present value to a member's account based on a member's age and mortality tables and subtracts from that value all payments made to the member over his lifetime. Any value remaining at the time of a member's death is then payable as a death benefit to a member's named beneficiary. (Hearing Officer's Finding of Fact No. 7.)

but could file an appeal with the Board within 30 days. Petitioner, through counsel, filed a timely appeal. (Board op. at 4.)

**Proceeding Before a Hearing Officer**

The Board thereafter appointed a hearing officer to hear the matter. The hearing officer scheduled a hearing for June 2, 2016. Prior thereto, on April 7, 2016, Audrey Williamson (Intervenor), Decedent's sister, filed a petition to intervene with the Board. By order dated May 23, 2016, the Board granted Intervenor's petition. Neither Petitioner nor Intervenor made arrangements with SERS to personally examine Decedent's July 3, 2012 retired member beneficiary nomination form or to have the form examined forensically. The hearing proceeded as scheduled. (Board op. at 4.)

At this hearing, Dana Shettel, an administrative officer with SERS' Bureau of Benefit Administration, testified regarding the history of Decedent's beneficiary nominations discussed above. Petitioner then testified on his own behalf. Petitioner stated that he was a contractor and first met Decedent 15 to 20 years earlier when he was hired by Decedent to perform some contracting work at Decedent's home in Harrisburg, Pennsylvania. Petitioner noted that he and Decedent became friends during that time and remained friends over the years. Petitioner was aware of Decedent's brother, James, since Petitioner performed some contracting work for him as well around the same time. Petitioner indicated that Decedent had mentioned that he and his brother were not on speaking terms. In fact,

3

Petitioner noted that Decedent rarely spoke of his family other than to state that he had no contact with them.[2] (Reproduced Record (R.R.) at 76-84.)

Petitioner testified regarding Decedent's work with PHEAA and noted that Decedent once assisted him with his daughter's education loan. Petitioner indicated that Decedent worked for him on and off after retiring from PHEAA. He stated that he was aware that Decedent had suffered from skin cancer in the past and had undergone operations for the same. He noted that Decedent helped him out over the years. For example, besides the assistance with his daughter's loan, Decedent loaned him money to purchase a truck for his business on one occasion, and for dental work on another occasion. Petitioner was not aware that Decedent had named him as his sole beneficiary in 2006. As Decedent's health declined, Petitioner said that he drove Decedent to the hospital on at least two occasions and to doctors' appointments, helped take care of Decedent's dog, visited him in the hospital, and, with Decedent's authorization, consulted with doctors, nurses, and social workers. Eventually, Decedent made Petitioner his power of attorney relating to both health and financial matters.[3] (R.R. at 84-90.)

Petitioner then identified a sympathy card addressed to him from Decedent's hospice caretakers recognizing the assistance Petitioner provided to Decedent. Petitioner later attempted to move this card into evidence. However, the hearing officer appears to have sustained the objection to the same by counsel for SERS on the basis of relevancy. Petitioner proceeded to explain that, over the

---

[2] Petitioner testified that he was not aware that Decedent had another brother and a sister until around the time of the hearing. (Reproduced Record (R.R.) at 84.) We note that the reproduced record submitted by Petitioner fails to contain the lowercase "a" as required by Pa.R.A.P. 2173.

[3] Intervenor and counsel for SERS stipulated to the fact that Petitioner acted as Decedent's power of attorney. *See* R.R. at 116-18.

4

course of his friendship with Decedent, he became aware of, and interacted several times with, Connors. He indicated that Decedent called him at least three times to remove Connors from Decedent's home. He described the relationship between Decedent and Connors as not good and involving a lot of arguing and fighting. He noted that Decedent was concerned for his safety because Connors had a drinking problem. On one occasion, Petitioner was aware that Connors was arrested over an incident with Decedent but did not know that Connors was later directed to stay away from Decedent as part of his probation.[4] Petitioner explained that Decedent had concerns about his money around Connors. (R.R. at 92-100.)

During the last months of Decedent's life, Petitioner was not in contact with Intervenor, Decedent's sister, but he acknowledged that she had visited Decedent a couple of times before his death. He testified that he tried to stop by each day and that his wife also assisted with taking care of Decedent's dog and residence. On cross-examination, Petitioner stated that Decedent advised him that he, Petitioner, was his SERS beneficiary a few days before he passed away in June 2015. (R.R. at 101-07.)

Petitioner next presented the testimony of his wife, Theresa Hamilton. Hamilton stated that she was present at Decedent's home when the power of attorney was discussed and executed, for which she signed as a witness. She specifically witnessed Decedent sign these forms and indicated that Decedent was aware of what he was signing and why. She stated that she assisted Decedent with his dog and

_____

[4] Counsel for Petitioner asked the hearing officer to take judicial notice of certain official documents relating to Connors' arrest and convictions on charges of harassment and criminal mischief in relation to an incident with Decedent that occurred on June 24, 2011. These documents had also been attached to Petitioner's original appeal to the Board and included an affidavit of probable cause, a December 13, 2011 court order which included a directive that Connors have no direct contact with the victim, Decedent, and criminal court docket entries. Counsel for SERS objected on the basis of relevancy and the hearing officer sustained this objection.

5

chores around his residence. She noted that she only saw Decedent's family members at his residence on the day he passed away. (R.R. at 111-14.)

The hearing officer next heard from Intervenor. Intervenor testified that she called the Area Agency on Aging and arranged the hospice care for Decedent and that she and her daughter took care of Decedent four to five times a week. On weekends, she stated that she and her husband would care for Decedent. She indicated that she only saw Petitioner at Decedent's residence on the day that he passed away. She noted that Decedent called her and asked her to pick up his prescriptions because he had no way of getting to the pharmacy. She described Decedent's living conditions as deplorable and unclean, with dog feces all around the house. In the days before Decedent's death, Intervenor indicated that the only people she ever saw at the residence were hospice caretakers. (R.R. at 126-29.)

On cross-examination, Intervenor stated that she was not at Decedent's residence in the evening hours. She also stated that she had pictures of the residence both before and after she cleaned it up but did not bring the pictures with her to the hearing. Additionally, she testified that she paid all of Decedent's bills, including bills for his lot rent, home insurance, groceries, and medicine, but again had no receipts with her to prove such payments were made. Intervenor acknowledged that she had Decedent's cell phone on the day he died and that there was a threatening text from Connors. She also recalled noting in a letter to SERS that Connors had previously physically assaulted Decedent and stole from him. (R.R. at 130-35.)

Intervenor described the July 3, 2012 retired member beneficiary nomination form as a forgery. She did not believe that Decedent signed that form. Upon questioning from the hearing officer, Intervenor stated that she was familiar with Decedent's signature. However, upon viewing Decedent's signature on his

6

prior beneficiary nomination forms, Intervenor indicated that she only recognized part of these signatures as appearing to be Decedent's. On re-cross examination, Intervenor identified discrepancies with the letter "R" as signed on the July 3, 2012 beneficiary nomination form, when compared with the signatures on the earlier forms. (R.R. at 136-45.)

SERS then presented the testimony of Debra Murphy, the Director of SERS' Bureau of Benefit Administration. Murphy testified that Decedent had a death benefit payable in the amount of approximately $66,000.00. She stated that the State Employees' Retirement Code (Code)[5] requires SERS to pay this benefit to the beneficiary last named in writing, via a beneficiary nomination form sent to SERS. Murphy explained that the beneficiary nomination form can be obtained from SERS' website or at a local field office and must be signed and dated by the SERS member as well as two witnesses. Once received, SERS reviews the form for the necessary signatures and date and scans it into an electronic system. She noted that SERS only reviews the form to ensure a valid beneficiary is named, be it an actual person (any beneficiary who is under 18 further requires the listing of a guardian) or entity such as a trust or charity, and if any contingent beneficiaries are named. She stated that, with respect to the retirement option chosen by Decedent, the beneficiary may be changed at any time prior to a member's death by filing a new beneficiary nomination form. If the form is correct, it is stamped approved and scanned into the system. If it is incomplete, it is stamped void and a letter is sent to the member explaining the deficiency. (R.R. at 146-51.)

Murphy stressed that SERS does not analyze the forms for forged signatures. She also noted that Decedent's 2012 beneficiary nomination form was

---

[5] 71 Pa.C.S. §§5101-5958.

7

never forensically examined to determine whether his signature was forged. She proceeded to review all of Decedent's beneficiary nomination forms and noted nothing irregular or improper with respect to any of the same. She identified the July 3, 2012 form as the last one received from Decedent. On cross-examination, Murphy testified that SERS does not notify a beneficiary that a new form has been filed naming a different beneficiary. Counsel for Petitioner attempted to have Murphy compare Decedent's signatures on the 2010 and 2012 forms, but the hearing officer sustained an objection by counsel for SERS. Murphy went on to explain that SERS maintains no protocol with respect to purported forged signatures. Further, she denied that anyone at SERS would ever advise a third party that a signature appeared to be forged. (R.R. at 151-63.)

On re-direct examination, Murphy stated that if someone questioned the authenticity of a signature, SERS would send a letter, like they did with Petitioner herein, saying SERS must pay the named beneficiary but noting that the recipient had 30 days to appeal. She noted that the appeal stays any payment of the death benefit. She reiterated that SERS does not conduct forensic examinations of signatures but does allow a beneficiary nomination form to be examined, which did not occur in this case. (R.R. at 164-67.)

**Hearing Officer Opinion and Recommendation**

On February 1, 2017,[6] the hearing officer issued her opinion and recommendation to affirm SERS' decision to honor Decedent's July 3, 2012 retired

---

[6] At the conclusion of the June 2, 2016 hearing, the hearing officer allowed the record to remain open for a period of 45 days to allow Petitioner to seek to enforce subpoenas that were issued for the attendance of two witnesses who failed to appear at the hearing. Ultimately, Petitioner did not follow through with this enforcement. The record was later closed on August 2,

8

member beneficiary nomination form recognizing Connors as the last named beneficiary. The hearing officer noted that Petitioner bore the burden of proof in this matter to establish by a preponderance of the evidence that Decedent's signature was forged on the July 3, 2012 form. The hearing officer concluded that Petitioner failed to present sufficient evidence to establish a forgery. The hearing officer also concluded that Intervenor's testimony relating to identification of Decedent's signature was neither reliable nor credible. The hearing officer indicated that Intervenor was not a designated beneficiary for Decedent's death benefit and she failed to present sufficient evidence, or cite to any law, supporting a claim that the death benefit should be paid to a relative of the deceased member.

As to the claims of a volatile relationship between Decedent and Connors, the hearing officer noted the lack of evidence with regard to the timing of the alleged volatile incidents in relation to the July 3, 2012 filing of Decedent's retired member beneficiary nomination form. In other words, the hearing officer noted that there was no evidence that the relationship between Decedent and Connors was strained in July 2012.

The hearing officer also rejected Petitioner's argument that the fact that Decedent's July 3, 2012 retired member beneficiary nomination form did not include Commonwealth employees as witnesses when all of his prior forms included such witnesses evidenced that the 2012 form was forged. The hearing officer noted that there was no requirement in the Code or its regulations that witnesses to SERS' documents must be employees of SERS or any other Commonwealth agency.

---

2016, after which the hearing officer established a briefing schedule. Upon receipt of briefs from Petitioner, SERS, and Intervenor, the hearing officer issued her decision.

Additionally, the hearing officer noted that the only evidence offered with respect to familiarity with Decedent's signature came from Intervenor, who was unable to definitively identify Decedent's signatures on the prior beneficiary nomination forms, thereby rendering her testimony neither credible nor reliable. Because Connors was the last person designated in writing to receive Decedent's death benefit and neither Petitioner nor Intervenor established that Decedent's signature on the July 3, 2012 form was a forgery, the hearing officer stated that SERS was "duty-bound to issue payment of Decedent's death benefits to [Connors]." (Hearing Officer op. at 19.) Petitioner thereafter filed exceptions to the hearing officer's opinion and recommendation.

## Board's Opinion

The Board adopted the opinion and recommendation of the hearing officer, including the hearing officer's findings of fact, conclusions of law, and discussion. The Board added to the discussion by noting that Petitioner "presented no evidence relevant to Decedent's mindset on July 3, 2012, when the [Connors] beneficiary designation was signed" and that Petitioner "fell short of proving by a preponderance of the evidence that the beneficiary form Decedent signed that day was invalid." (Board op. at 8.) The Board also noted that the hearing officer correctly rejected Petitioner's arguments with respect to the witnesses who signed the 2012 form and the alleged discrepancies in Decedent's signature on this form as identified by Intervenor as mere suspicions.

As to the exceptions filed by Petitioner, the Board agreed with SERS' characterization of the same as merely restating the arguments Petitioner raised in his brief to the hearing officer. The Board then addressed the exceptions in turn.

10

The Board described Petitioner's first exception, that there was a preponderance of evidence that the July 3, 2012 form was not produced and filed by Decedent, as unpersuasive. The Board noted that Petitioner merely provided anecdotal evidence that the relationship between Decedent and Connors was antagonistic on occasion, which was general and fell short of establishing that the 2012 form was invalid. The Board described the evidence submitted by Petitioner as "too speculative to be persuasive" and overruled this exception. (Board op. at 9.)

The Board similarly found Petitioner's second exception relating to the hearing officer's refusal to take judicial notice of Connors' criminal docket pertaining to an altercation with Decedent that led to the filing of criminal charges against Connors as unpersuasive. The Board concluded that said information was not relevant to the determination of whether the July 3, 2012 form was forged. The Board noted that SERS did not dispute that Decedent and Connors had a volatile relationship and, therefore, even if admitted it would not have helped Petitioner satisfy his burden of proof. Accordingly, the Board overruled this exception as well. Finally, the Board found that Petitioner's third exception, insofar as he seeks payment of Decedent's death benefit if the July 3, 2012 form were to be found invalid, amounted to a reiteration of Petitioner's prayer for relief, rather than an exception. Hence, the Board overruled this exception.

Ultimately, by order dated July 5, 2017, the Board denied Petitioner's request that SERS reject Decedent's July 3, 2012 retired member beneficiary nomination form, denied Intervenor's request to reject this form and distribute Decedent's death benefit to her, and directed SERS to disburse payment of Decedent's death benefit to Connors. Petitioner subsequently filed a petition for review with this Court.

11

## Discussion

On appeal,[7] Petitioner argues that the hearing officer, and by extension the Board, erred as a matter of law and abused its discretion by (1) requiring a higher standard of proof than the law requires; (2) excluding relevant and admissible evidence that clearly fell under exceptions to the hearsay rule; and (3) requiring the presentation of expert evidence or witness evidence of signature comparison when Pennsylvania law permits the trier of fact to engage in such analysis.

Section 5705 of the Code, 71 Pa.C.S. §5705, details the various retirement options offered by SERS. Decedent chose Option 1, which provides a retiree with "[a] life annuity to the member with a guaranteed total payment equal to the present value of the maximum single life annuity on the effective date of retirement with the provision that, if, at his death, he has received less than such present value, the unpaid balance shall be payable to his beneficiary." Section 5705(a)(1) of the Code, 71 Pa.C.S. §5705(a)(1). Section 5102 of the Code defines a "beneficiary" as "the person or persons last designated in writing to the board by a member to receive his accumulated deductions or a lump sum benefit upon the death of such member." 71 Pa.C.S. §5102. Additionally, section 5907(j) of the Code addresses the nomination of beneficiaries and provides, in relevant part, as follows:

> A member who is eligible and elects to receive a reduced annuity under Option 1, 2, 3, or 4, shall nominate a beneficiary or a survivor annuitant, as the case may be, by written designation filed with the board at the time of his

---

[7] Our scope of review is limited to determining whether an error of law was committed, whether there is substantial evidence to support necessary findings of fact, or whether constitutional rights have been violated. *Mager v. State Employees' Retirement Board*, 849 A.2d 287, 289 n.1 (Pa. Cmwlth. 2004).

12

> retirement. A member who has elected Option 1 may change his designated beneficiary at any time.

71 Pa.C.S. §5907(j). While the Code prescribes no time in which SERS must disburse the payment of a retired member's death benefit, in contrast to the 60-day requirement upon the death of an active member,[8] this Court has previously held that such payment must be made within a reasonable amount of time. *See Hutchinson v. Pennsylvania State Employees' Retirement Board*, 738 A.2d 7 (Pa. Cmwlth. 1999), *appeal denied*, 753 A.2d 821 (Pa. 2000).

In cases such as this, it is well-established that the party who maintains the existence of certain facts, in this case Petitioner, must prove those facts by a preponderance of the evidence. *Wingert v. State Employes' Retirement Board*, 589 A.2d 269, 271 (Pa. Cmwlth. 1991); *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission*, 578 A.2d 600, 602 (Pa. Cmwlth. 1990). A preponderance of the evidence is "such proof as leads the fact-finder . . . to find that the existence of a contested fact is more probable than its nonexistence." *Sigafoos v. Pennsylvania Board of Probation and Parole*, 503 A.2d 1076, 1079 (Pa. Cmwlth. 1986). This Court has described a preponderance of the evidence as "evidence that has sufficient weight to 'tip the scales on the side of the plaintiff.'" *Pennsylvania State Police v. Slaughter*, 138 A.3d 65, 73 (Pa. Cmwlth. 2016) (quoting *Se-Ling Hosiery, Inc. v. Margulies*, 70 A.2d 854, 856 (Pa. 1950)). Additionally, when conducting a review under the substantial evidence standard, courts look "for such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . [it must be] more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 29 A.2d 90, 92 (Pa. 1942).

---

[8] *See* Section 5905(g) of the Code, 71 Pa.C.S. §5905(g).

13

## Higher Standard of Proof

Petitioner first argues that the hearing officer and the Board erred as a matter of law and abused their discretion by holding him to a higher standard of proof than is required by law. More specifically, Petitioner argues that the hearing officer and Board essentially required him to provide testimony from a handwriting expert or other scientific or conclusive proof establishing that Decedent's signature on the 2012 form was forged, rather than simply applying the preponderance of the evidence standard and analyzing whether it was more likely than not that said signature was not in the hand of Decedent. However, we disagree as Petitioner misconstrues the opinions of the hearing officer and the Board.

In their respective opinions, both the hearing officer and the Board clearly recognized that Petitioner had to prove his case under the preponderance of the evidence standard. Both the hearing officer and the Board concluded that the evidence presented by Petitioner simply did not meet this standard. Neither the hearing officer nor the Board misapplied the standard of proof.

As he did below, Petitioner cites the following evidence as supportive of his appeal: all of Decedent's prior beneficiary nomination forms contained the signature of fellow PHEAA employees as witnesses but the 2012 form included unknown witnesses; Decedent and Connors had a volatile relationship that included criminal charges levied against Connors in 2011 for an incident involving Decedent; and Decedent and Petitioner had a trusting relationship to the extent that Decedent executed a power of attorney to Petitioner to oversee his financial and health-related matters. However, as both the hearing officer and the Board correctly noted, this evidence presented by Petitioner was insufficient to establish that the signature on Decedent's July 3, 2012 retired member beneficiary nomination form was forged or

14

even coerced. As the Board states in its brief, "Petitioner offer[ed] no evidence regarding the circumstances surrounding the actual execution and filing of the beneficiary form at issue here," but instead merely "strung together anecdotes unrelated to Decedent's beneficiary designation to assert that the designation was improper." (Board's brief at 13.)

With respect to the witness signatures, the Board noted that the hearing officer properly indicated that there was no requirement in the Code or its regulations that witnesses to SERS' documents must be employees of SERS or any other Commonwealth agency.[9] With respect to the relationship between Decedent and Connors, while Petitioner testified as to having to remove Connors from Decedent's home on three occasions, Petitioner provided no timeline for such events. Similarly, while Petitioner testified that Connors threatened to "beat up" Decedent, he did not state when this threat was made. (R.R. at 95.) Further, Petitioner admitted in his testimony before the hearing officer that Decedent and Connors "probably got along once in a while." *Id.* In other words, as the Board notes in its brief, without any timetable with respect to the events described above, there was no way for the hearing officer or the Board to determine "whether the stories related by Petitioner accurately reflected the status of the relationship between Decedent and Mr. Connors at the time the beneficiary form was executed in 2012." (Board's brief at 14.)

In sum, neither the hearing officer nor the Board erred or abused its discretion by holding Petitioner to a standard of proof higher than a preponderance of the evidence. The hearing officer and the Board clearly recognized the proper

---

[9] In this regard, we note that when Decedent executed his pre-2012 beneficiary nomination forms, he was still working for PHEAA, which suggests why he opted for fellow employees as witnesses. However, on July 3, 2012, the date that Decedent executed the beneficiary nomination form at issue herein, he had been retired for nearly two years.

15

standard to be applied. The evidence submitted by Petitioner simply did not meet this standard.

**Exclusion of Relevant and Admissible Evidence**

Petitioner next argues that the hearing officer, and by extension the Board, erred as a matter of law and abused its discretion by excluding relevant and admissible evidence that clearly fell under exceptions to the hearsay rule. We disagree.

Petitioner's argument in this regard focuses upon the hearing officer's refusal to allow Petitioner to submit criminal court information relating to an incident that occurred between Decedent and Connors in June of 2011 leading to Connors' arrest and conviction on harassment and criminal mischief charges. Contrary to the hearing officer's determination, Petitioner asserts that such evidence was relevant to establish the violent and coercive nature of Connors' relationship with Decedent, that the volatility was related to Decedent's refusal to give Connors money, that Connors physically attacked Decedent and threatened his life, that Decedent sought police assistance and feared for his safety, and that Connors was restrained by court order from having any contact with Decedent, which included the time when the 2012 form was executed and submitted by Decedent.

Petitioner proceeds to cite to several different Pennsylvania Rules of Evidence that would allow the presentation of this documentary evidence as an exception to hearsay. However, the hearing officer did not refuse to allow the submission of this evidence on the basis of hearsay. Instead, the hearing officer sustained SERS' objection to the submission of this evidence on the basis of relevancy. We conclude that the hearing officer's determination in this regard, later

16

affirmed by the Board, was proper. These documents relate to an incident that occurred on June 24, 2011, more than a year prior to the execution and submission of the 2012 form at issue here, and offer no insight into Decedent's relationship with Connors or Decedent's state of mind in 2012. Further, the Board, as the ultimate factfinder in these cases, has exclusive province with respect to the resolution of evidentiary conflicts, witness credibility, and the weight of the evidence. *Beardsley v. State Employes' Retirement Board*, 691 A.2d 1016, 1018 (Pa. Cmwlth. 1997).

Thus, we see no error or abuse of discretion on the part of the hearing officer or the Board in rejecting this evidence on the basis of relevancy.

**Evidence Relating to Signature Comparison**

Finally, Petitioner argues that the hearing officer and the Board erred as a matter of law and abused their discretion by requiring him to present witness and/or expert evidence of signature comparison when Pennsylvania law permits the trier of fact to engage in such analysis. Again, we disagree.

Section 6111 of the Judicial Code addresses handwriting evidence, providing as follows:

> (a) *Opinion evidence as to handwriting.* — Where there is a question as to any writing, the opinions of the following persons shall be deemed to be relevant:
> (1) The opinion of any person acquainted with the handwriting of the supposed writer.
>
> (2) The opinion of those who have had special experience with, or who have pursued special studies relating to, documents, handwriting, and alterations thereof, who are called experts in this section.

17

(b) *Comparison of handwriting.* — It shall be competent for experts in giving their testimony, under the provisions of this section, to make comparison of documents and comparison of disputed handwriting with any documents or writing admitted to be genuine, or proven to the satisfaction of the judge to be genuine, and the evidence of such experts respecting the same shall be submitted to the jury as evidence of the genuineness or otherwise of the writing in dispute.

(c) *Comparison of signatures.* — It shall be competent for experts in formulating their opinions to the court and jury to place the genuine and disputed signatures or writing in juxtaposition, and to draw the attention of the jury thereto; and it shall furthermore be competent for counsel to require of an expert a statement of the principles on which he has based his work, the details of his work, and his opinion that the results are important to the point at issue, or the reasoning, analysis and investigation by which he has arrived at his opinion.

(d) *Jury question.* — The opinions of the witnesses to handwriting being submitted as competent testimony to the jury, the final determination as to whether any particular handwriting is genuine or simulated shall remain, as heretofore, a question for the jury on all the evidence submitted.

42 Pa.C.S. §6111(a)-(d).

Section 6111(a) makes clear that both lay and expert testimony are relevant and admissible in a case where a person's handwriting is called into question. In this case, the only evidence submitted with respect to the authenticity of Decedent's signature on the 2012 form came from Intervenor, Decedent's sister. The hearing officer and the Board allowed Intervenor to testify regarding the same and thereafter evaluated her testimony. Contrary to Petitioner's argument, neither the hearing officer nor the Board required Petitioner to present expert witness evidence of signature comparison. However, upon review of Intervenor's testimony,

18

the hearing officer and the Board concluded that such evidence was not credible or reliable. Indeed, as the hearing officer noted in her opinion, Intervenor was unable to definitively identify Decedent's signatures on any of the prior beneficiary nomination forms, let alone offer any reliable opinion comparing those signatures to Decedent's purported forged signature on the 2012 form.

With respect to Petitioner's assertion that the Board, as factfinder, was required to compare Decedent's signatures on the various beneficiary nomination forms and make a final determination as to the authenticity of Decedent's signature on the 2012 form, we note that such assertion misconstrues section 6111 of the Judicial Code. Section 6111(d) essentially states that the trier of fact has final say on the authenticity of a signature based "on all the evidence submitted." The fact remains that the signature evidence presented in this case was simply not sufficient to persuade the hearing officer or the Board that Decedent's signature on the 2012 form was forged. Again, we agree with the hearing officer and the Board in this regard.

**Conclusion**

Because the hearing officer and the Board applied the correct preponderance of the evidence standard of proof, properly rejected as irrelevant the documentary evidence Petitioner attempted to submit regarding Connors' criminal incident with Decedent in 2011, and properly concluded that the evidence submitted in this case was insufficient to invalidate the authenticity of Decedent's signature on his July 3, 2012 retired member beneficiary nomination form, or otherwise establish that such signature was forged or coerced, the Board did not err in denying Petitioner's request to reject this form.

19

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas K. Hamilton,                            :
        Petitioner                    :
                                      :   No.  1063 C.D. 2017
        v.                            :
                                      :
Pennsylvania State Employees                   :
Retirement Board,                              :
        Respondent                    :

## ***ORDER***

AND NOW, this 3rd day of October, 2018, the order of the Pennsylvania State Employees' Retirement Board, dated July 5, 2017, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge