IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Piccirilli,            :
    Petitioner            :
                   :
    v.            :
                   :
The Bureau of Unclaimed Property,            : No. 714 C.D. 2020
    Respondent            : Argued: April 12, 2021


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
      HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY          FILED: May 5, 2021


    Joseph R. Piccirilli (Piccirilli) petitions this Court for review of the Pennsylvania Department of Treasury's (Treasury)[1] July 17, 2020 Final Decision and Order (Final Decision) denying Claim No. 79377967 (Claim). The sole issue before this Court is whether Treasury erred by concluding that Piccirilli failed to prove his entitlement to $58,492.98 in a statement savings account (Property I.D. #16619825) (Account) held by Treasury pursuant to the portion of The Fiscal Code commonly referred to as the Disposition of Abandoned and Unclaimed Property Act (Act). [2,3] After review, this Court affirms.

---

[1] Although Piccirilli named Treasury's Bureau of Unclaimed Property as the Respondent herein, Treasury issued the Final Decision under review.

[2] Act of April 9, 1929, P.L. 343, *as amended*, added by Section 5 of the Act of December 9, 1982, P.L. 1057, 72 P.S. §§ 1301.1-1301.29. Treasury is charged with safekeeping and administering unclaimed property under the Act. *See* Sections 1301.14 and 1301.20 of the Act, 72 P.S. §§ 1301.14, 1301.20.

[3] Piccirilli presents five issues in his Statement of Questions Involved: (1) whether the hearing officer erred by finding that Piccirilli failed to show his entitlement to the Account; (2) whether the hearing officer failed to apply the appropriate burden of proof; (3) whether the hearing

PNC Bank National Association (PNC) escheated the Account (ending in 2767) to Treasury. PNC reported to Treasury that the Account's owner was Pittsburgh Brewing Company, Inc. (PBC), "ATTN[:] James C. Leda [(Leda)], 600 Grant St., Ste. 2800, Pittsburgh, PA[.]" *See* Reproduced Record (R.R.) at 19a.

On or about September 17, 2018, Piccirilli filed the Claim with Treasury's Bureau of Unclaimed Property (Bureau) seeking the funds in the Account and a $1,950.50 unclaimed check (Property I.D. #13862017) as PBC's owner. *See* R.R. at 110a-111a. By March 15, 2019 letter, a Bureau claims examiner notified Piccirilli relative to the Claim: "After careful review of your [C]laim, we have determined that you are not entitled to collect the funds in question for lack of entitlement." R.R. at 6a.

On April 8, 2019, Piccirilli filed a petition for review with Treasury's Prothonotary, and requested a hearing. *See* R.R. at 8a-9a. In his petition for review, Piccirilli represented that he was the 100% owner and sole shareholder of PBC, which was located at 3340 Liberty Avenue, Pittsburgh, PA; he has held the Account since he purchased PBC in 1995; the Account was funded to pay a retrospective premium adjustment on an outstanding insurance policy; the Account remained intact up to the time it was escheated to Treasury in 2010; although United Growth Partners purchased PBC's assets out of bankruptcy in 2005,[4] it did not purchase PBC's cash or cash equivalents; and PBC retained ownership of the Account. R.R. at 8a-9a.

officer improperly determined that Piccirilli was not the *owner* of the Account, as defined in the Act; (4) whether the hearing officer disregarded the Act's intention to ultimately return property to its rightful owner; and (5) whether the hearing officer erred by concluding that only the Trustee of Pittsburgh Food & Beverage, Inc., and his deputies, had the right to access the Account. *See* Piccirilli Br. at 4. Because these issues are subsumed in this Court's analysis of whether Treasury erred by concluding that Piccirilli failed to prove his entitlement to the Account, they have been combined and will be addressed accordingly herein.

[4] United Growth Partners renamed the business Iron City Brewing Company, and it has a new employer identification number.

On April 25, 2019, Treasury filed an answer and new matter to Piccirilli's petition for review, therein denying that Piccirilli was PBC's owner, declaring: the Account was opened in 1997, not 1995; the Account was reported to Treasury in the name of Pittsburgh Brewing Disposition Company, with an Employer Identification Number (EIN) ending in 8370, and an account number ending in 2767; the reported address was "ATTN[:] James C. Leda, 600 Grant St., Ste. 2800, Pittsburgh, PA 15219-2709[;]" bankruptcy documents named trustee Lawrence F. Ranallo (Ranallo/Trustee) and his agents as having the authority to conduct business through the Account; and Piccirilli's documentation did not establish his ownership of the Account. R.R. at 15a; *see also* R.R. at 14a-21a.

On June 6, 2019, Piccirilli filed a reply to Treasury's new matter, wherein he further explained that he purchased PBC from bankruptcy trustee Ranallo/Trustee for Pittsburgh Food & Beverage, Inc. (PFBI) in 1995, and Ranallo retained Leda to assist with the sale, which sale was approved by the United States Bankruptcy Court for the Western District of Pennsylvania (Bankruptcy Court). *See* R.R. at 23a. Piccirilli acknowledged that the Account was opened on June 26, 1997, and was owned by Pittsburgh Brewing Disposition Company, but claimed that Pittsburgh Brewing Disposition Company was part of PBC, since the two entities have the same EIN ending in 8370, and the same address - 3340 Liberty Avenue, Pittsburgh, PA. *See* R.R. at 22a-34a.

On August 1, 2019, a hearing was conducted before a hearing officer. *See* R.R. at 90a-107a. On July 17, 2020, the hearing officer issued the Final Decision denying Piccirilli's Claim.[5] *See* Piccirilli Br. Ex. A. On July 28, 2020, Piccirilli appealed to this Court.[6]

---

[5] Treasury did not expressly address the $1,950.50 unclaimed check (Property I.D. #13862017) portion of Piccirilli's Claim.

[6] This Court's review of a Treasury order deciding a claim to an escheated savings account "is limited to determining whether an error of law was committed, whether the hearing officer's

3

Preliminarily,

> [p]roperty that is presumed abandoned is subject to the custody and control of the Commonwealth [of Pennsylvania (Commonwealth)]. Section 1301.2 of the [Act], 72 P.S. § 1301.2. Property is presumed abandoned if it is unclaimed by the apparent owner for a specified period of time . . . . Section 1301.6 of the [Act], 72 P.S. § 1301.6. Once the period of time has passed and the property is presumed abandoned, the holder of the property must file with [Treasury] a report identifying such property. Section 1301.11 of the [Act], 72 P.S. § 1301.11. [Treasury] is then required to publish a notice of the existence of the property and to attempt to notify by mail the possible owner of the property. Section 1301.12 of the [Act], 72 P.S. § 1301.12. If the property is not claimed from the property holder (financial institutions, insurers, utilities, business associations, fiduciaries, courts and public officers and agencies), the property is paid or delivered to [Treasury]. Section 1301.13(a) of the [Act], 72 P.S. § 1301.13(a).

*Smolow v. Hafer*, 867 A.2d 767, 769 n.2 (Pa. Cmwlth. 2005), *aff'd*, 959 A.2d 298 (Pa. 2008). "Upon the payment or delivery of the property to [Treasury], the Commonwealth shall assume custody and shall be responsible for the safekeeping thereof." Section 1301.14 of the Act, 72 P.S. § 1301.14.

Section 1301.19 of the Act declares that "[a]ny person claiming an interest in any property paid or delivered to the Commonwealth under this article may file a claim thereto . . . ." 72 P.S. § 1301.19. Section 1301.20(a) of the Act provides that Treasury "shall consider any claim filed under this article and may hold a hearing and receive evidence concerning it." 72 P.S. § 1301.20(a). "The burden of proof in an administrative proceeding under the [Act] is on the claimant to show by a preponderance of the evidence that he is entitled to the property that he seeks."

---

necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *Morris v. Pa. Treasury Dep't Bureau of Unclaimed Prop.*, 152 A.3d 1083, 1086 n.2 (Pa. Cmwlth. 2016).

4

*Morris v. Pa. Treasury Dep't Bureau of Unclaimed Prop.*, 152 A.3d 1083, 1086 (Pa. Cmwlth. 2016). "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry."[7] *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 n.11 (Pa. Cmwlth. 2019) (quoting *Del. Cnty. v. Schaefer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012)).

Piccirilli argues that Treasury erred by concluding that he failed to prove his entitlement to the Account. Piccirilli specifically contends that the hearing officer improperly determined that he was not the *owner* of the Account, as defined in the Act.

"[T]he legislative objective of [the Act is to] giv[e] the Commonwealth custody of [] property while seeking ultimately to return it to its rightful owner." *Del. Cnty. v. First Union Corp.*, 992 A.2d 112, 119 (Pa. 2010). Section 1301.1 of the Act defines *owner* as

> a person that has a legal or equitable interest in property subject to this article or a person whose name appears on the record of a holder as the person entitled to property held, issued or owing by the holder and shall include a depositor in case of a deposit, a creditor, claimant or payee in case of other choses in action and a legal representative of the person with the interest, the entitled person, the depositor, the creditor, the claimant or the payee.

72 P.S. § 1301.1. In these proceedings, Treasury, or its hearing officer, is the fact-finder. *See Morris*; *see also Lepre v. Dep't of Treasury* (Pa. Cmwlth. No. 1186 C.D. 2012, filed Mar. 4, 2013), slip op. at 6.[8]

---

[7] "A preponderance of the evidence is 'such proof as leads the fact-finder . . . to find that the existence of a contested fact is more probable than its nonexistence.'" *Hamilton v. Pa. State Emps. Ret. Bd.*, 194 A.3d 1147, 1155 (Pa. Cmwlth. 2018) (quoting *Sigafoos v. Pa. Bd. of Prob. & Parole*, 503 A.2d 1076, 1079 (Pa. Cmwlth. 1986)).

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. *Lepre* is cited herein for its persuasive value.

At the hearing, Piccirilli testified that he purchased PBC out of bankruptcy from Ranallo in 1995, and Pittsburgh Brewing Disposition Company, which was owned by PBC, was included in the sale. *See* August 1, 2019 Notes of Testimony (N.T.) at 14; R.R. at 94a. Because, at the time of the sale, there were still unknown or contingent liabilities, Piccirilli agreed to set up a fund (i.e., the Account) to cover claims that may arise. *See* N.T. at 15-16, 30-31; R.R. at 94a, 98a. Piccirilli explained that Ranallo actually opened the Account at PNC in the name of Pittsburgh Brewing Disposition Company DIP,[9] with the EIN ending in 8370, "ATTN[:] James C. Leda, 600 Grant St., Ste. 2800, Pittsburgh, PA[.]" R.R. at 17a; *see also* N.T. at 15-16, 32; R.R. at 20a, 94a, 98a. Piccirilli admitted that his name is not among those listed on the Account's depositor acknowledgement signature card.[10] *See* N.T. at 17, 36-37, 45; R.R. at 99a, 101a.

Piccirilli testified that, in 2005, PBC commenced voluntary reorganization bankruptcy proceedings in the Bankruptcy Court, pursuant to Chapter 11 of the Bankruptcy Code.[11] *See* N.T. at 19; R.R. at 95a; *see also* R.R. at 118a-122a. According to Piccirilli, United Growth Partners purchased PBC's machinery/equipment and some of PBC's assets through the Bankruptcy Court, but did not acquire PBC's cash, cash equivalent or deposit accounts, including the Account. *See* N.T. at 20-23, 32; R.R. at 95a-96a, 98a. Piccirilli explained that he remained PBC's sole stockholder after the sale. *See* N.T. at 24, 31; R.R. at 96a, 98a. However, Piccirilli thereafter clarified that he is 100% *common* stock owner, and he only holds 44% of the *preferred* stock.[12] *See* N.T. at 34-36; R.R. at 99a. Piccirilli

---

[9] DIP stands for Debtor in Possession. *See* N.T. at 15, 37; R.R. at 94a, 99a.

[10] Ranallo and Trustee agents Scott H. King, Michael J. Talarico, and Mark S. Weinsweig are listed on the Account's depositor acknowledgement card. *See* R.R. at 17a.

[11] 11 U.S.C. §§ 1101-1195.

[12] Thomas Gephardt, Steven Sands, Jan Smythe, and Jack Cerone own the remaining preferred stock. *See* N.T. at 34; R.R. at 99a.

6

claimed that whether he was PBC's 100% stockholder depended upon how one "look[s] at the stocks combined[;]" "preferred stock [ was not] considered stock until the time [it] would - [it was a] convertible note[] that would go to stock over a time period." N.T. at 35; R.R. at 99a.

The hearing officer admitted into the record Pennsylvania Department of State, Bureau of Corporations' (Department of State) records, which state that, on September 5, 2018, PBC's EIN ended in 8370, it was still an active company (although not then doing business), it was located at 3340 Liberty Avenue, Pittsburgh, PA, and Piccirilli was its president, secretary, and treasurer. *See* N.T. at 25-29, 33-35, 42; R.R. at 13a, 96a-99a, 101a, 112a-113a. The hearing officer also admitted Department of State records demonstrating that, on April 25, 2019, Pittsburgh Brewing Disposition Company's address was 3340 Liberty Avenue, Pittsburgh, PA (*see* N.T. at 44; R.R. at 101a, 114a); that Ranallo was PFBI's Trustee (*see* N.T. at 56-57; R.R. at 104a, 161a-170a); and that the Bankruptcy Court issued a decision on May 8, 2006, in a case in which the IUE-CWA Pension Fund sued Piccirilli, as *debtor's officer*, for breach of a settlement agreement (*see* N.T. at 58-59; R.R. at 105a, 181a-186a).

Based on the record evidence, the hearing officer concluded that Piccirilli failed to prove by a preponderance of the evidence that he is the owner entitled to claim the Account under the Act, reasoning:

> Stemming from a bankruptcy proceeding, the [Account] was opened on June 26, 1997, according to the information provided by [PNC]. (*See* Treasury Ex[]. A). Upon opening the [A]ccount, a signature card was executed which provided exclusive access to this [A]ccount by [Ranallo/Trustee], and his agents who are listed as Scott H. King, Michael J. Talarico, and Marc S. Weinsweig. (Treasury Ex[]. A).

> Piccirilli asserts the [Account] was "set up at closing conducted in 1995 for [PBC]" to cover 'unknown or

7

contingent liabilities.' ([Hearing Officer Ex. (HO)]-2, ¶ 2; N.T. [at] 15). Piccirilli contends that Treasury should pay him the money in the [A]ccount because he is "100% owner" of [PBC] and he maintained this contingent liability account until [PBC's] bankruptcy. (HO-2, ¶ 1 and ¶ 2). Neither of these bases will entitle Piccirilli to the [Account].

Most important, Piccirilli is not a signatory on the [A]ccount and there is no evidence that either [Ranallo/]Trustee . . . or the [B]ankruptcy [C]ourt itself have granted Piccirilli the right to receive these funds. It is well-settled that a signature card, and the terms contained therein, is a contract between the bank and the depositor. *First Fed. Sav. & Loan Ass'n v. Off*[.] *of the State Treasurer*, . . . [669 A.2d 914] ([Pa.] 1995) (the legal relationship between a financial institution and the depositor is based on [a] contract, and the contract terms are contained in the signature cards). A signature card that is unambiguous shall be treated as any other contract in that the intent expressed shall not be contradicted in the absence of fraud, accident, or mistake. *In Re Estate of Kostelnik*, . . . 369 A.2d 1211, 1213 ([Pa.] 1977).

[Ranallo/Trustee] and his deputies had control over the money [in the Account] before it was escheated to Treasury. Piccirilli admits that he had no access or ability to use the [A]ccount which was opened by [Ranallo/Trustee]. (N.T. [at] 36-37).

Piccirilli claims to be the sole shareholder and 100% owner of [PBC], but that fact is not established by evidence of record except for Piccirilli's own testimony. (*See* N.T. [at] 30-31, 33). In fact, Piccirilli also testified that as of the date of the hearing before the undersigned [h]earing [o]fficer, there was a new owner of [PBC]. (N.T. [at] 32-33). Whether or not Piccirilli is - or was - a "sole shareholder" of [PBC] or Pittsburgh Brewing Disposition Company is irrelevant to the issue of ownership of this particular bank [A]ccount established during a bankruptcy proceeding by virtue of an unambiguous signature card. The [B]ankruptcy [C]ourt may have the authority to order that an individual is entitled to money in this bankruptcy-administered [A]ccount, but based upon the record before

8

this [h]earing [o]fficer, no such evidence has been produced that the [B]ankruptcy [C]ourt has done so.

Treasury has no statutory duty to Piccirilli to enforce any obligation which he claims is owed to him by [PBC] or the Pittsburgh Brewing Disposition Company. Treasury's statutory duty and obligation is exclusively to the reported owner pursuant to [the Act]. On this record, Piccirilli has not established that he is *the* owner - or even *an* owner - of the [Account].

Final Dec. at 5-7 (footnote omitted).

"It is not within the province of this Court to retry the case or to make independent factual findings and conclusions of law." *Dep't of Transp. v. Herbert R. Imbt, Inc.*, . . . 630 A.2d 550, 551 n.1 ([Pa. Cmwlth.] 1993). To the contrary, the agency is entrusted with the duty of fact-finding, and we may neither assist nor interfere with this function. The agency's role as fact-finder includes determining the credibility of witnesses and resolving conflicting evidence. An agency's findings need not be supported by uncontradicted evidence, so long as they are supported by substantial evidence.[13] If the agency's findings are supported by substantial evidence, they are binding on this Court. Additionally, we view the evidence and all reasonable inferences arising from the evidence in the light most favorable to the prevailing party.

*Balshy v. Pa. State Police*, 988 A.2d 813, 835 (Pa. Cmwlth. 2010) (citations omitted).

Based upon this Court's review of the record, there was substantial evidence to support Treasury's findings and conclusions. Thus, this Court holds that Treasury properly concluded that Piccirilli failed to prove by a preponderance of the

---

[13] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, [but must be] . . . more than a scintilla and must do more than create a suspicion of the existence of the fact to be established.'" *Bennett v. Bureau of Pro. & Occupational Affairs, State Bd. of Chiropractic*, 214 A.3d 728, 735 (Pa. Cmwlth. 2019) (quoting *Yi v. State Bd. of Veterinary Med.*, 960 A.2d 864, 874 (Pa. Cmwlth. 2008) (citation omitted)).

evidence that he is the Account's owner.  Accordingly, this Court discerns no error or abuse of discretion by Treasury in denying Piccirilli's ownership of the Account.

For all of the above reasons, Treasury's order is affirmed.


_____

ANNE E. COVEY, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Piccirilli,           :
          Petitioner       :
                           :
          v.              :
                           :
The Bureau of Unclaimed Property,  :   No. 714 C.D. 2020
          Respondent   :

## O R D E R

AND NOW, this 5th day of May, 2021, the Pennsylvania Department of Treasury's July 17, 2020 Final Decision and Order is affirmed.

_____
ANNE E. COVEY, Judge